E-filing

1    COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT 42 U.S.C §§ 1983

2

3    Name  Soltero , Victor      D.

4         (Last)      (First)     (Initial)

5    Prisoner Number  CDCR K36340

6    Institutional Address  HIGH DESERT STATE PRISON D5-210
                            P.O. Box 3030

7                        Susanville, CA 96127

8

9    _____

10        UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF CALIFORNIA

11   VICTOR DANIEL SOLTERO
     (Enter the full name of plaintiff in this action)

12        VS.                      ) Case No. C 07-4256 PJH (PR)
                                   ) (to be provided by the clerk of court)
13   JOE MC GRATH ; RODERICK Q. HICKMAN;  )
                                   )  COMPLAINT UNDER THE
14   M.S. EVANS ; G. PONDERS ; J. CELAYA ; M.  )  CIVIL RIGHTS ACT,
                                   )  42 U.S.C §§ 1983 , AMENDED
15   ATCHLEY ; J. RUELAS ; E. GARCIA ; R. SALGADO;  )  COMPLAINT RE-ORDER
                                   )  DATED MARCH 10, 2008.
16   C. BEVINS, et al (see II parties B).  )
     (Enter the full name of the defendant(s) in this action)  )
17                                 )

18   [All questions on this complaint form must be answered in order for your action
     to proceed.]
19   I. Exhaustion of Administrative Remedies

20   [Note: You must exhaust your administrative remedies before your claim can go
21   forward. The court will dismiss any unexhausted claims.]

22   A.      Place of present confinement   High desert State Prison D5-210
                                            P. Box 3030
                                            Susanville, CA 96127
23   B.      Is there a grievance procedure in this institution?

24          YES (X)      NO ( )

25   C.      Did you present the facts in your complaint for review through the grievance
26          procedure?

27          YES (X)      NO ( )

28   D.      If your answer is YES, list the appeal number and the date and result of the appeal at

     [Hand written duplicate of 42 U.S.C. §1983 form]

each level of review. If you did not pursue a certain level of appeal, explain why.

1. Informal appeal _Pursuant to California Code of Regulations_

_(CCR) 3084.5(a)(3) "... informal level shall be waived..."_

2. First formal level _Pursuant to CCR 3084.5, appeals_

_coordinator bypass_

3. Second formal level _SVSPC-06-02822 (denied); SVSP D-06-02355; SVSP (denied)_
_(Denied);_
_06-03977; SVSPC-07-03214 (P.GRANTED, RVE REHEARD); unlisted_
_Second formal level responses are under VCGCB CLAIM No.: G566872_

4. Third formal level _IAB CASE No.: 0611035 (Retaliations in section H.(e2)_
_(denied); IAB Case No.: 0610663 (denied); relevant info. found in the_
_decision finding of IAB Case No.: 0509161; unlisted Third level responses are_
_under VCGCB CLAIM No.: G566872_

E.    Is the last level to which you appealed the highest level of appeal available to you?

     YES ( t )    NO ( X ) CDCR RESPONSE NOT DE MUUTION WITH VCGCB
                           (FROM THIRD FORMAL LEVEL).

F.    If you did not present your claim for review through the grievance procedure, explain

why. _Any residuum from exhausted claims should not be viewed as 'not_

_presented'. Or the Plaintiff was in fear of further retaliation, inclu-_

_ding fear for his life, of further retaliation by CDCR._

II. Parties

     A.    Write your name and your present address. Do the same for additional plaintiffs, If any.

_Victor Daniel Soltero K36340, HIGH DESERT STATE_

_PRISON D5-210, P.O. Box 3030, Susanville, CA 96127_

     B.    Write the full name of each defendant, his or her official position, and his or her place of

          employment.

_{ See attached additional page(s) labeled_

_"II Parties, Section B.(defendants) continued". }_

{ II Parties, Section B.(defendants)continued. }

1  (one) Joe Mc Grath,was/is the Secretary of State
2  Deputized for the 'California Department of
3  Corrections and Rehabilitation(CDCR) and is the
4  signatured apon Administrative Bulletin(AB)
5  05/02 (the protocol for the pilot program). The
6  known address(es) for the California Secretary(ies)
7  is̲ are: 1500 11th St., Sacramento, CA 95814 and,
8  the known address for CDCR is:P.O. Box 942883,
9  Sacramento, CA 94283-0001;
10 (two) Roderick Q. Hickman, was/is the Secretary
11 of CDCR. The known address(es) are the same
12 as in above-(one);
13 (three) M.S. Evans,was/is the Warden of Salinas
14 Valley State Prison(SVSP), the known address
15 for SVSP is:P.O. Box 1050, Soledad,CA 93960;
16 (four) G. Ponder,was/is the Facility C Yard
17 Captain at SVSP. The known address is the
18 same as in above-(three);
19 (five) J. Celaya,was/is the lieutenant of facility C
20 yard at SVSP. The known address is the same
21 as in above-(three);
22 (six) M.Atchley,was/is the Sergeant of Facility
23 C yard at SVSP. The known address is the same
24 as in above-(three);
25 (seven) J. Ruelas,was/is an Correctional Officer
26 (%) of Facility C at SVSP. The known address
27 is the same as in above-(three);
28 (eight) E.Garcia,was/is an Correctional Officer

-2-1-

{ II Parties, Section B. pg 2 (defendants) continued }

1 (%) of Facility C, at SVSP. The known address

2 is the same as in above-three;

3 (nine) R. Salgado, was/is %, of Facility C, at SVSP.

4 The known address is the same as in above (three);

5 (ten) C. Bevins, was/is %, of Facility C, at SVSP. The

6 known address is the same as in above-(three);

7 (eleven) B. Chavez, was/is %, of Facility C, at SVSP.

8 The known address is the same as in above (three);

9 (twelve) D. Moreno, was/is %, of Facility C, at SVSP.

10 The known address is the same as in above-(three);

11 (thirteen) L. Flowers, was/is %, of Facility C, at SVSP.

12 The known address is the same as in above-(three);

13 (fourteen) P. Lopez, was/is %, of Facility C, at SVSP..

14 The known address is the same as in above-(three);

15 (fifteen) R. Briones, was/is %, of Facility C, at SVSP.

16 The known address is the same as in above (three);

17 (sixteen) D. Smethers, was/is %, of Facility C, at SVSP.

18 The known address is the same as in above-(three);

19 (seventeen) R. Lapurga, was/is %, of Facility C, at SVSP.

20 The known address is the same as in above-(three);

21 (eighteen) ▬▬▬ Jones, was/is an Sergeant at

22 Facility C, at SVSP. The known address is

23 the same as in above-(three);

24 (Nineteen) V. Solis, was/is Correctional Counselor

25 II, of Facility C, at SVSP. The known address

26 is the same as in above (three);

27 [NOTE: THE NAMES OF ALL THE DEFENDANT(S) RECORDED ON AN VIDEO TAPE ARE

28 UNKNOWN TO THE PLAINTIFF AT THIS TIME, AND WILL REQUIRE DISCOVERY DISCLOSURE..]

(twenty) J. Stevenson, was/is an Lieutenant, of Facility 'C', of SVSP. The known address is the same as in above-(three);

(twentyone) R. Mott, was/is BMU Facilitator, of Facility 'C', at SVSP. The known address is the same as in above-(three);

(twentytwo) M. Nilsson, was/is sergeant of Facility C yard, at SVSP. The known address is the same as in above (three).

III.    Statement of Claim.

State here as briefly as possible the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

See additional pages) labeled:
III Statement of Claim Continued

IV.    Relief.

Your complaint cannot go forward unless you request specific relief. State briefly exactly what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

See additional pages) labeled:
III Statement of Claim
IV Relief Continued

{III Statement of Claim, continued }

(ONE) ON OCT. 2, 2006, the defendant (Correctional
officer J. Ruelas), "sucker punched" the Plaintiff
while the Plaintiff was in mechanical restraints,
maliciously and sadistically (which resulted in
bruising and swelling) for the very purpose of
causing the Plaintiff harm, in violation of the Eight
Amendment right secured by the Constitution or
law of the United States, and the deprivation
(to be free from cruel and unusual punishment)
was committed by the said-defendant acting under
the color of state law. The force used by the
said-defendant, was not justified by any
legitimate law enforcement or prison management
need, or was completely out of proportion to
that need.;

(TWO) The defendant (Correctional Officer E.
Garcia) is an accomplice and cohort to the
physical attack upon the Plaintiff, in violation
of the Eight Amendment of the US. Constitution,
for his actions in collaboration with defendant
J. Ruelas on Oct. 2, 2006, by physically
participating in the attack against the
Plaintiff noted at above-(ONE). The deprivat-
ion of the Plaintiff's right(s), by the defend-
ant (Correctional Officer E. Garcia), was
committed by the said-defendant acting
under the color of state law. The force

-3-1-

1  used by the said-defendant, upon the Plaintiff,
2  was not justified by any legitimated law
3  enforcement or prison management need, or was
4  completely out of proportion to that need.;
5
6  (THREE) The defendant (M. Atchley), is the person
7  whom commenced the melee, and lead the physical
8  charge against the Plaintiff and other inmate(s), on Oct. 2,
9  2006. The said-defendant performed an illegal
10 cell-extraction against known protocol, by
11 commanding the cell #225 door to be opened.
12 Subsequently entering and removing by means
13 of physical force, inmate(s) L. Vega #49838,
14 and Guzman # K82787, with the aid of
15 other defendant(s) (R. Salgado, C. Blevins,
16 and B. Chavez) using physical force. The
17 said-defendant(s) were acting to encourage
18 and incite the melee, and are accomplice to
19 the action(s) of their co-defendant(s) in (ONE)
20 , and (TWO). The said-defendant(s) also assisted
21 in manufacturing documentation to conceal
22 and compound a crime.
23
24 (FOUR) The Plaintiff was an idividualist, not
25 positioned amongst inmate(s) Guzman, nor
26 Vega, nor involved, but was simultaneously
27 attacked, as noted at above (ONE), and (TWO).
28 [ NOTE: THE PROTOCOL AND PROCEDURE FOR INMATE(S)

1  WHO 'HOLD' CUFFS, TRAYS, ect... AND WARRENTS AN EXT-
2  RACTION, INCLUDES FIRST CLEARING AND SECURING
3  THE IMEDIATE AREA, IN THIS INSTANCE THE DAY ROOM
4  FLOOR, AMONGST OTHER KNOWN PRONGS SUCH AS:
5   GEARING UP; CHAIN OF SUPERVISORY APPROVAL;
6  VIDEO MONITORING; EXPLORATION OF OTHER READILY
7  AVAILABLE ALTERNATIVES. ect.] These defendant(s)
8  were not acting in any legitimate law enforcement
9  or prison management need, or was completely
10  out of proportion to that need. This was an
11  melee, that the defendants) literally dragged
12  the Plaintiff into..
13

14 (FIVE) The defendant ( J.Celaya), on Oct 2, 2006,
15  did move through an 'pack of Correctional Off-
16  icers'(located between himself and Vega #V49334)
17  yelling, "... get out the way, get out the way..."
18 (something to that affect), and performed an Martial
19 Arts type maneuver on inmate Vega from behind,
20 slamming inmate Vega onto the concrete.
21

22 (SIX) The said-defendant ( J.Celaya) was not acting
23 in any legitimate law enforcement or prison
24 management need, or was completely out of
25 proportion to that need. Inmate Vega was
26 acting in compliance to the commands of his
27 escorting designate(s) at the time he was
28 attacked by the defendant.

(SEVEN) The said-defendant ( J. Celaya) was an active participant in the melee. The defendant acted and moved in incitement and encouragement of the melee. The defendant is an accomplice to the actions of his co-defendants of the melee. The said-defendant also assisted in the manufacturing of documentation to conceal and compound a crime.

(EIGHT) The defendant (D. Moreno), did act in collaboration, and was an participant in the melee which occured on Oct. 2, 2006. The said-defendant acted as an accomplice to above-noted (ONE) thru (SEVEN) in facilitating and assisting the actions of their co-defendant(s). The said-defendant also assisted in the manufacturing of documentation to conceal and compound a crime.

(NINE) The defendant (L. Flowers), did act in collaboration, and was an participant in the melee which occured on Oct. 2, 2006. The said-defendant acted as an accomplice to above-noted (ONE) thru (SEVEN) in facilitating and assisting the actions of the co-defendant(s). The said-defendant also assisted in the manufacturing of documentation to conceal and compound a crime.

1  (TEN) The defendant (P. Lopez), did act in coll-
2  aboration, and was an participant in the melee
3  which occured on Oct. 2. 2006. The said-
4  defendant acted as an accomplice to above-
5  noted(ONE) thru (SEVEN) in facilitating and
6  assisting the actions of his/her co-defendants).
7  The said-defendant also assisted in the manu-
8  facturing of documentation to conceal and
9  compound a crime.
10

11 (ELEVEN) The defendant (R. Briones), did act
12  in collaboration, and was an participant in
13  the melee which occured on Oct 2, 2006.
14  The said-defendant acted as an accomplice
15  to above-noted (ONE) thru(SEVEN) in facilitat-
16  ing and assisting the actions of his/her co-
17  defendants). The said-defendant also ass-
18  isted in the manufacturing of documentation
19  to conceal and compound a crime.
20

21 (TWELVE) The defendant (D. Smethers), did act
22  in collaboration, and was an participant in
23  the melee which occured on Oct. 2, 2006. The
24  said-defendant acted as an accomplice to
25  above-noted (ONE) thru(SEVEN) in facilitating
26  and assisting the actions of his/her co-
27  defendants). The said-defendant also
28  assisted in the manufacturing of docum-

-3-5-

entation to conceal and compound a crime.

(THIRTEEN) The defendant (R. Lapurga), did act in collaboration, and was an participant in the melee which occured on Oct. 2, 2006. The said-defendant acted as an accomplice to above-noted (ONE) thru (SEVEN) in facilitating and assisting the actions of his/her co-defendants). The said-defendant also ass-isted in the manufacturing of documentation to conceal and compound a crime.

[NOTE: THE EXIBIT FOR (ONE) thru (THIRTEEN) IS EXIBIT 'B' of 42 USC 1983 COMPLAINT FILED AUG 20, 2007, IN THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA. THE PLAINTIFF WAS NOT ABLE TO MAKE COPIES (PERSONAL) OF THIS COMPLAINT AND GIVES NOTICE, FROM THE DATE OF THE COURT ORDER MARCH 10, 2008, TO THIS DATE MARCH 26, 2008, THIS COMPLAINT FOWARD TO THE COURT. THE LAW LIBRARY HERE IN ADMINISTRATIVE SEGREGATION FOR BUILDING D-5, HAS NOT BEEN OPERATIVE. THIS DENIES THE PLAINTIFF ACCESS TO MAKE COPIES. PLEASE TAKE INTO CONSIDERATION, THAT AN PEN FILLER AND BLANK PAPER IS THE ONLY MATERIAL THE PLAINTIFF HAD ACCESS TO FOR PREPARATION AND COMPOSITION OF THIS COMPLAINT.]

(FOURTEEN  ) The defendant (G. Ponder) acting in
collaboration, deliberately abused policy and
procedures to retaliate against the Plaintiff
for filing greivence(s), in violation of the first,
fifth, fourteenth, and eighth Amendment
right(s) secured by the Constitution or law
of the United States, and the deprivation
of the Plaintiff's right(s), was by the said-
defendant acting under the color of state
law. The said-defendant did conspire and
manufacture false documentation for the
purpose of maliciously causing harm upon
the Plaintiff, which include numerous Rules
Violation Reports 115 (RVR 115's), Behavior
Modification Unit (BMU) placement(s)/Adm-
inistrative Segregation (ASU) placement(s)
('hole'), and vindictive/malicious labeling of
the Plaintiff with stigmatization(s) of known
taboo criterion, in the California prison
system, General Population (namely,
pseudo-"safety concerns/Protection", "org-
anized Criminal Activities ... ect.), which
resulted in an attempted murder upon the
Plaintiff.

(fifteen   ) On October 2, 2006, then and there, right-after the physical alteration descri- bed at-(ONE), the Plaintiff was taken directly to the program Office area, and taken before the committee (in the program office area), where the defendant (G. Ponder) was the chairman of the committee. Simply put, the Plaintiff was ruffed up by the staff and taken before the committee, under subsidiary terms. (see Exibit _Amend C._)

(sixteen   ) In the presence of the commi- ttee, at the Oct 2, 2006 hearing noted-above, the Plaintiff found himself distraught and in dismay by the events of the staff and com- mittee's actions, and requested that the hearing be held in absentia. (See Exibit Amend 'c'). The plaintiff was returned to his cell.

(seventeen  ) At some point in time, sub- siquent to the physical **alterication** noted at (one), an Medical Tech. reported the staff misconduct. The defendant (Sergeant M. Atchley) at sometime during the night of October 2, 2006, was accom- panied by approximately 15 uniformed employees of CDCR, removed the Plaintiff from his assigned living quarter, to the program area. In an threatening manner.

- 3-B -

1 (eighteen ) In route from the Plaintiff's assigned
2 living quarter, to the program office area, an
3 uniformed employee held an video camera and
4 recorded the following events:
5
6 (a) The Medical Tech. (name unknown to the
7 plaintiff) is recorded on the video tape exa-
8 mining the swelling and brusing on the back
9 of the Plaintiff's head, where he was "sucker
10 punched". And is recorded filling out Medical
11 reports, which are missing;
12
13 (b) The defendants (Sergeant Atchley and
14 Sergeant Jones), and the mob of uniformed
15 employees (names unknown), are recorded
16 visually and audibly attempting to conceal
17 and compound the events of 'staff misconduct'
18 by threatening and intimidating the Plaintiff,
19 to aquire a statement in coerciom. Having
20 the Plaintiff denounce the Medical Tech's
21 reporting of the Oct. 2, 2006 staff 'miscond-
22 uct';
23
24 (c) The said-video recording, recorded
25 exactly what was said, and by whom;
26 (d) This was not the known procedure. (or 4a
    - or 4Bb.)
27 [NOTE: THE THREATS, AND CONTENT OF THE THREAT(S), WERE
28 LATER CARRIED OUT AMONGST THE RETALIATIONS AND

1   REPRISALS AGAINST THE PLAINTIFF].
2
3   (nineteen    ) The defendant (G. Ponder) was/is
4   the Captain of SVSP, 'C' Facility, on Oct. 2, 2006.
5   Under his command, the Plaintiff was held in
6   his assigned cell 228, building C8, at SVSP,
7   for two weeks after the physical altercation
8   noted at (ONE). This is known as "being 'sat on'",
9   an control factor to conceal and compound. It
10  is not the known procedure.
11
12  (twenty    ) The Plaintiff, on October 16, 2006,
13  was placed in administrative segregation by
14  the defendant ( J. Celaya), with pseudo-safe-
15  ty concerns. And the 'decision' for the place-
16  ment under the fictitious and stigmatic
17  'reason for placement', was made by the
18  defendant (G. Ponder). (see Exibit Amend 'E'.)
19
20  (twenty one ) On Oct 26, 2006, the Plaintiff
21  appeared before the SVSP's, ASU Institutional
22  Classification Committee (ICC), for ASU
23  placement review. The Plaintiff emphatically
24  denied having any 'safety' concerns. (see Exibit
25  Amend. 'A'.).
26
27  (twenty two  ) The Investigative Security
28  Unit (ISU), investigated, and completed

-3-10-

1  the investigation on 12·5·06, into the 'reason
2  for placement' of the Plaintiff in ASU (noted-
3  above) and the reason for placement was
4  found to be untrue. (see Exibit Amend 'B').
5
6  (twenty three) On Dec. 12, 2006, the Plaintiff
7  was returned to Facility 'C', SVSP, by ICC.
8  The Plaintiff was placed officially back
9  into the BMU on Dec. 13, 2006, by SVSP,
10 Facility 'C', Unit Classification Committee
11 (UCC). The defendant ( ). Colaya) was the
12 chairman. (see Exibit Amend 'B').
13
14 (twenty four ) The Plaintiff remained in the
15 BMU until (March 26, 2007, **when** the
16 defendants (G. Panders, V Sulis, J. Steven-
17 son, et al.) acting in collaboration, abused
18 policy and procedures, in retaliation, when
19 they placed and held the Plaintiff in
20 ASU until the Plaintiff was transfered
21 to High Desert State Prison in Sept. of
22 2007. (See Exibit Amend 'D', and Amend 'E'.)
23
24 (twenty five ) The pretext for the Plaintiff's
25 March 26, 2007, ASU Placement by the
26 above-named defendants was "... refusal
27 to participate in the interview process ..."
28 (See Exibit Amend 'D'.) "... and posed

1  a threat." [NOTE: FACTUALLY, THERE WAS NO THREAT, NOR WAS
2  ANY THREAT EVER NAMED, WHICH THE PLAINTIFF ACTUALLY
3  POSED. NOTE²: KEEP IN MIND, THE PLAINTIFF WAS PLACED
4  IN ASU FOR NOT INTERVIEWING.].

5  ( twenty six ) The said-defendants (noted above)
6  'mercurialness', as to the reason for the Plaintiff's
7  ASU placement, is revealed on the 128G, of Aug.
8  9, 2007, which states in part, "... during his
9  placement in BMU he disrupted the program
10 by shouting out of his cell for others not to
11 participate in the program. Since his removal
12 from the GP the program has been running
13 ..., has an strong influence over the southern
14 hispanic population." [THIS IS MISINFORMATION AND
15 MENDACITY.]s

16

17 (a) The reference(s) in the above-noted 128G
18 of 8.9.2007, are an interpolation of an 128B
19 dated 5.01.2007. (See Exibit Amend. 'D');
20

21 (b) The above-noted 128B of 5.01.2007, is an int-
22 erpolation of an 3.23.2007, RVR 115#CO7-03-0024,
23 Authored by Motts. (see Exibit Amend. 'G');
24

25 (c) The Plaintiff was found 'not Guilty' of the
26 above-noted RVR115@(b), the factors were
27 proven to be untrue, apon adjudication.
28 (see Exibit Amend. 'G.');

(d) Both Inmates, Hart # H88709 and, Sneede # J37911, are not Southern Hispanic Inmates, in fact they are black folk (See Exibit Amend. 'G'.);

(e) The defendants ( G. Randers, V. Solis, et al.) moved ahead with this false documentation, knowing it was not true, and fully aware of the above-noted factor(s) (a) thru (d). (see the 8.9.2007, 128G, previously foward ~~foward~~ in 'expedite motion'.);

(f) Recorded on the 8-9-2007, 128G, is the signatures of the defendants, in acknowle- dgment of the RVR(s) disposition"...dismiss- ed in the interest of justice".;

(g) At Exibit Amend 'F', is the 128 G of 7.5.2007, noting "...extension to complete disciplinary process...", and in the 'DISCIPLINARY HISTORY' section, the identification of the pending disciplinary, "failure to meet program expectations (PENDING), willfully resisting a Peace Officer".;

(h) From Dec 13, 2006, to March 26, 2007, (see ~~twentythree~~) and (twenty four ), when Plaintiff was in the BMU. The BMU was up and running. Interestingly enough, the Plaintiff has found

-3-13-

1  that in the Administrative Bulletin AB °5/02
2  (the protocol for the pilot program. BMU.), it
3  states that records of the BMU are foward to
4  the Director of High Security CDCR.
5
6  (twenty seven  ) The Plaintiff based his decision
7  not to interview ('Prison snitch') on an CDCR,
8  Sacramento Inmate Appeal Branch (IAB)
9  response, IAB Case No.: 05-09161, which
10  states in part, "...there is no regulation which
11  allows staff to discipline an inmate for
12  refusing to interview or for not signing an
13  promise to behave chrono..". Correspondance
14  copies were foward to the warden and
15  SVSP appeals coordinator.
16
17  (twenty eight ) The basic gist of the phrase,
18  "Recurring Failure to meet Program
19  Expectations" (i.e. not signing) amounts to:
20  (1.) Prison snitch or (2.); conceding to
21  'Organized Criminal Gang activity! The
22  Plaintiff simply did not want to be villain-
23  ized, nor stigmatized.
24
25  (twenty nine  ) The RVR 115 # C07-01-0014,
26  for, "recurring failure to meet program expect-
27  ations", authored by the defendant (R. Mott)
28  on 1-11-2007, was subsequent to the

3-14-

1  IAB Case No.:0509161 response, and an
2  abuse of policy and procedure to retaliate
3  against the Plaintiff.(See Exibit Amend.'H-1').
4

5  ( THIRTY      ) The RVR 115 #C06-10-0017, for
6  "recurring failure to meet program expectations",
7  authored by the defendant ( V. Solis ) on 10.2.2006,
8  was subsequent to the IAB Case No.:0509161
9  response, and an abuse of policy and procedures
10 to retaliate against the Plaintiff.(See Exibit Amand.'H-2')
11

12 ( THIRTY ONE  ) The RVR 115 # C06-12-0047, for
13 "recurring failure to meet program expectations",
14 authored by the defendant (B. Chavez) on
15 12.26.2006, was subsequent to the IAB Case
16 No.:0509161, response, and an abuse of
17 policy and procedure to retaliate against
18 the Plaintiff. [NOTE: DEFENDANT (B CHAVEZ) CLAIMED
19 HE NEVER AUTHORED THE RVR, AND IT WAS UNBEKNOWNST.]
20 (See Exibit Amand.'H-3')

21 ( THIRTY TWO  ) The 128 B chrono, for "recurring
22 failure to meet program expectations", authored
23 by the defendant ( G. Pondor ) on 8.23.06,
24 was subsequent to the IAB Case No.:0509-
25 161 response, and an abuse of policy and
26 procedure to retaliate against the Plaintiff.
27 (See Exibit Amand 'H-4'.)

28 (THIRTY THREE  ) The 128 A chrono, for recurring

- 3 - 15 -

1  failure to meet program expectations", auth-
2  ored by the defendant (M.Nilsson) on 12.28.
3  2006, was subsequent to the IAB Case No.:
4  05 07161 response, and an abuse of policy
5  and procedure to retaliate against the
6  Plaintiff. (see Exibit Amend.'H-5').
7
8  (                    )
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  (THIRTY FOUR) Please take notice that prior to the
2  noted deprivations, the defendant (G. Ponder)
3  effectively used an 'attack' ("attempted murd-
4  er of Correctional Officers"), as an guise to
5  mask and proffer an alterior adjenda, as well
6  as justify abuse.
7
8  (THIRTY FIVE) The use of an reinforcement stratigy
9  by the defendant (G. Ponder) is no psycholog-
10 ical marvel. Never the less, it is quite effict-
11 ive. Sow an advantage... reap an habit. Using
12 misinformation and mendacity, the said-defe-
13 manufactured memorandums dated November
14 14, 2005, and December 29, 2005. These memo-
15 randums were distributed amongst the
16 staff, for the purpose of reinforceing pre-
17 judice and animosity in contra of the
18 Plaintiff. The memorandums interpolate the
19 July 14, 2005, 'attack' noted above, the
20 Plaintiff name(d), and a determination of
21 a threat the Plaintiff posed.
22
23 (THIRTY SIX) Sorting through the many prongs
24 of the defendant(s) efforts to compound and
25 conceal, the Plaintiff has found it simpler to
26 articulate the discernment of facts by
27 application of "The Principals) of entail-
28 ment". Where we can now discern the

the defendants actions of deprivation, are
contrary to the principals of Entailment'.

(THIRTYSEVEN) Factually, the Plaintiff had
absolutely nothing to do with the 'attack'
noted-above, nor any knowledge of the
occurance, other then that provided on
the said-memorandums. The plaintiff was
not in or around that location, and there is
no basis, offer of proof, substantion, nor
evidence in connection with the Plaintiff.

(THIRTY EIGHT ) Nor, was/is there any grounds
for questioning or interviewing the Plaintiff
in connection to the said-matter. Curiously
enough, the defendant (G. Pondor) was well
aware of these facts.

(THIRTYNINE ) The said-defendant was
attempting to involve the Plaintiff in
'snitching', against the Plaintiff's will, by use
of an smear campaign and submission tactics.
The Plaintiff has no obligation to act as an
Agent, Informant, nor Operative, to coll-
ect and gather information for the state.

27(——————)Had

-3-18-

1  (FORTY      ) subsequent to the above-noted
2  11·14·05, and 12·29·2005, memorandums, and
3  the IAB Case No. : 05 09161 response, the
4  defendant (G.R. vao fretaliated against the
5  Plaintiff, by placing the Plaintiff in the BMU.
6  The defendant(s) combed the Plaintiff's central
7  file (C-file) and retroactively used an '2002
8  riot', as the pretext for the BMU placement
9  of the Plaintiff.
10

11  (FORTY ONE    ) Under the above-said dub-
12  ious and highly suspect conditions, the
13  Plaintiff sought the known safeguard
14  protection under the law. The Plaintiff
15  contacted and foward an copy of the SVSP
16  BMU 'Orentation Booklet, General Rules and
17  Procedure', to the Office of Administrative
18  Law (OAL), in re: California Penal Code
19  (dX1)(C), and Government Code 11340.
20

21  ( FORTY TWO ) The OAL return correspondance
22  revealed the "conditions' for an authorized
23  pilot program had not been met. (see Exibit
24  Amend.    ). The OAL correspondance states,
25  " ... The Office Of Administrative Law
26  cannot identify any regulations on point...',
27  (see Exibit Amend.    ). The BMU at SVSP was
28  operating pursuant to 'Underground' regulations.

1  (See Exibit(s) Amend. 'K-1', Amend. 'K-2', and Amend.
2  'K-3'.).
3

4  (FORTY THREE) The defendant (Roderick Q.
5  Hickman), is/was the custodial gaurdian of the
6  Plaintiff, and is responsible for the welfare
7  of the Plaintiff, as well as the operation(s) of
8  the California Department of Corrections
9  and Rehabilitation (CDCR), and its staff and
10 employees.
11

12 (FORTY FOUR) The defendant (Joe McGrath), is/
13 was also an higher-level custodial gaurdian
14 of the plaintiff, and is responsible for the
15 welfare of the Plaintiff, as well as the oper-
16 ation(s) of CDCR, it's staff and employees.
17 Said-defendant is also the signatory (signer)
18 of the Administrative Bulletin (AB) 05/02
19 (the protrocol for the pilot program, Behavior
20 Modification Unit (BMU).
21

22 (FORTY FIVE ) The defendant (MS. Evans), is
23 also an higher-level custodial gaurdian of
24 the Plaintiff, and responsible for the welfare
25 of the Plaintiff, as well as the operation(s)
26 of Salinas Valley State Prison (SVSP), its
27 staff and employees. The said-defendant is
28 also the signatory (signer) of the

- 3 - 20 -

1   SVSP-BMU 'Orentation Booklet, General
2   Rules and Procedures'. Also an signatory
3   (signer) of memorandum Dec. 29, 2005. (see
4   Exibit Amend. I ).
5
6   { V
7      See memorandum of points and
       authiorties in support of complaint
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4      I declare under penalty of perjury that the foregoing is true and correct.

5

6      Signed this __26__ day of __March__, 20__08__

7

8                              _____

                               (Plaintiffs signature)
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV
~ Relief Continued ~

(1) THE ASSISTANCE OF THE ATTORNEY GENERAL'S
OFFICE, AND ATTORNEY GENERAL, ~IN COMPLIANCE~
~WITH 42 USC 1997~ TO REMEDY THE MINIMUM
STANDARD OF HUMAN DECENCY ISSUE(S), AND THE
CONSTITUTIONALLY GUARANTEED MINIMA DEP-
RIVATION(S) IN THE CALIFORNIA DEPARTMENT
OF CORRECTIONS AND REHABILITATION (CDCR);

(2) THE SAFEGAURD PROTECTION BY THE OFFICE
OF ADMINISTRATIVE LAW, TO REDRESS THE
REGULATION INADEQUACIES OF CDCR'S
"Underground" REGULATIONS;

(3) THE CALIFORNIA DEPARTMENT OF CORRE-
CTIONS AND REHABILITATION (CDCR), OR IF
NECESSARY AN APPOINTEE 'MASTERS' TO
REMOVE THE STIGMATIC AND RETALIATORY
MATERIAL FROM THE PLAINTIFF'S FILE;

(4) JUST COMPENSATION AND MONETARY DAMAG-
ES TO BE PAID BY THE DEFENDANT(S) IN THEIR
PERSONAL AND/OR PROFESSIONAL CAPICITY,
INDEPENDANTLY OR AS AN WHOLE (WHICHEVER
IS DEEMED APPROPIATE FOR EACH INSTANCE),
FOR THE FOLLOWING AMOUNT AND REASON
SET FORTH:

(A) FOR THE ABUSE(S) OF POLICY AND PROCEDURE(S)

1  IN RETALIATION AGAINST THE PLAINTIFF, WHERE
2  THE DEFENDANT(S) VINDICTIVELY AND MALICIOUSLY
3  STIGMATIZED THE PLAINTIFF WITH KNOWN TABOO
4  CRITERION, FOR THE DELIBERATE PURPOSE OF
5  CAUSING THE PLAINTIFF HARM. AND THEN, DID
6  RESULT IN AN ATTEMPTED MURDER (MULTIPLE
7  STABS AND GASHING INJURIES) APON THE
8  PLAINTIFF, THE AMOUNT OF $5,000,000.00 ;
9
10 (b) FOR THE DEFENDANT(S) PHYSICAL ABUSE OF
11 THE PLAINTIFF, BY 'SUCKER PUNCHING', AND
12 RUFFING UP THE PLAINTIFF, CAUSING BRUISING
13 AND SWELLING TO THE BACK OF THE PLAINTIFFS
14 HEAD. THE AMOUNT OF, $1,000,000.00 . ;
15
16 (c) FOR EACH DAY THE PLAINTIFF SUFFERED IN THE
17 SVSP·BMU, RESULTING FROM THE ABUSE OF
18 POLICY AND PROCEDURE(S) IN RETALIATION AND/OR PURSUANT
19 TO 'Underground' REGULATIONS, THE AMOUNT
20 OF $100.00 for each day, FROM EACH DEFEND-
21 ANT ~~APPLICABLE~~ ;
22
23 (d) FOR EACH DAY THE PLAINTIFF SUFFERED IN
24 THE SVSP-ASU, RESULTING FROM THE ABUSE
25 OF POLICY AND PROCEDURE(S) by THE DEFEN-
26 DANT(S) IN RETALIATION. THE AMOUNT OF,
27 $100.00 FOR EACH DAY, FROM EACH DEFENDANT.
28

(5) FOR CDCR TO ISSUE MANUAL(S) AND PROVIDE
TRAINING TO IT'S EMPLOYEE(S) IN REGARD TO
THE FOLLOWING:

(a) PROHIBITION OF RETALIATION;

(b) THE PROCEDURES FOR PROMULGATION AND
PROCEDURAL REQUIREMENTS FOR ENVISIONED
REGULATION(S) AND ORDINANCE;

(c) IDENTIFY(ING) AND MAKING KNOWN THE
'MINIMUM STANDARD OF HUMAN DECENCY', AND
'CONSTITUTIONALLY GUARENTEED MINIMA'.


(6) Attorney fee(s) to be paid to Plaintiff, in
the amount of $25,000⁰⁰ from each defendant.

V. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMPLAINT.

# KNOW YOUR RIGHTS
# ASSAULT AND EXCESSIVE FORCE

### ACLU NATIONAL PRISON PROJECT

*Much of the following information was taken from a book by John Boston &
Daniel Manville called the Prisoners' Self-Help Litigation Manual (3d ed. 1995).*

**Important Note:** The law is always evolving. If you have access to a prison law
library, it is a good idea to confirm that the cases and statutes cited below are still
good law. The date at the bottom of this page indicates when this information
sheet was last updated.

### Protection from Assault
Prison officials have a legal duty to refrain from using excessive force and to
protect prisoners from assault by other prisoners. "Being violently assaulted in
prison is simply not part of the penalty that criminal offenders pay for their
offenses against society." See Farmer v. Brennan, 511 U.S. 825, 833 (1994).
However, prison officials are not automatically responsible for all assaults on
prisoners, and a prison official's use of force does not automatically violate the
Constitution. Courts apply different rules to decide whether the Eighth
Amendment has been violated after an assault by a prisoner or a use of force by
prison staff.

### Assault by Another Prisoner
Prison officials may be held liable under the Eighth Amendment only if they act
with "deliberate indifference" or "reckless disregard" for a prisoner's safety. See
id. at 836-37. In other words, prison officials may be liable if they knew that a
prisoner was at substantial risk of serious harm, but ignored that risk and failed to
take reasonable steps to protect the prisoner. See id. at 847. Generally, courts
have distinguished between a substantial risk of serious harm (or strong
likelihood of injury) and the everyday risk of harm that comes from being in prison
(or mere possibility of injury). See, e.g., Brown v. Hughes, 894 F.2d 1533, 1537
(11th Cir. 1990). In addition, even when a prisoner is harmed, if prison officials
responded reasonably to the risk, they are not held liable. Farmer, 511 U.S. at
844-45. Courts often dismiss isolated failures to protect as "mere negligence,"
even when prison officials had prior information about a threat to a prisoner, but
failed to act on that information. See Davidson v. Cannon, 474 U.S. 344, 347-48
(1986).

There are two ways to show deliberate indifference in a prisoner assault case.
One is to show that prison officials' failed to respond or act reasonably in light of
a particular threat of danger to an individual prisoner. See, e.g., Odom v. South
Carolina Dep't of Corr., 349 F.3d 765, 772 (4th Cir. 2003) (plaintiff warned officer
that other prisoners would try to kill him); Scicluna v. Wells, 345 F.3d 441, 445
(6th Cir. 2003) (plaintiff testified he had told unit manager of risk of assault by his

co-defendant); <u>Cottone v. Jenne</u>, 326 F.3d 1352 (11th Cir. 2003) (failure to monitor prisoner known to be violent is deliberate indifference); <u>Peate v. McCann</u>, 294 F.3d 879 (7th Cir. 2002) (plaintiff attacked twice by the same prisoner); <u>Cantu v. Jones</u>, 293 F.3d 839 (5th Cir. 2002) (guards allowed prisoner out of his cell to attack another prisoner); <u>Horton v. Cockrell</u>, 70 F.3d 397 (5th Cir. 1995) (staff failed to protect prisoner from attack despite his grievances requesting protection); <u>Swofford v. Mandrell</u>, 969 F.2d 547, 549 (7th Cir. 1992) (guards put sex offender in unsupervised holding cell). The other is to show prison conditions or practices that create a dangerous situation for prisoners in general. See, e.g., <u>Butler v. Dowd</u>, 979 F.2d 661, 675 (8th Cir. 1992) (en banc) (random housing assignments of vulnerable prisoners and obstacles to admission to protective housing); <u>Skinner v. Uphoff</u>, 234 F.Supp. 2d 1208 (D. Wyo. 2002) (de facto policy of failing to investigate assaults). Sometimes both theories apply to the same fact situation.

In addition to showing deliberate indifference, a prisoner must show that the actions or practices of prison officials actually caused the assault. There must be a connection between what prison officials did or failed to do and the harm that occurred. See <u>Best v. Essex County</u>, 986 F.2d 54, 56-57 (3rd Cir. 1993). Thus, courts have imposed liability on line correctional officers who observed an assault or knew of a risk to a prisoner, but did nothing, see, e.g., <u>Ayala Serrano v. Lebron Gonzales</u>, 909 F.2d 8, 14 (1st Cir. 1990); on higher-level supervisors who made or failed to make polices, or failed to act on risks they knew about, see, e.g. <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1447-48 (9th Cir. 1991); and on city or county government when a prisoner's assault resulted from a governmental policy, see, e.g., <u>Berry v. City of Muskogee</u>, 900 F.2d 1489, 1497-99 (10th Cir. 1990). Courts require prisoners to show how individual named defendants are responsible for causing the assault. <u>Morales v. New York State Dep't of Corr.</u>, 842 F.2d 27, 29-30 (2nd Cir. 1988) (explaining how several defendants were liable in the same incident).

## Use of Force by Prison Staff

With respect to convicted prisoners, prison staff violate the Eighth Amendment when they use force "maliciously and sadistically for the very purpose of causing harm," but they are permitted to use force "in a good faith effort to maintain or restore discipline." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 (1992) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986)). Courts apply different legal standards to arrestees, pre-trial detainees, and convicted prisoners; however, an inmate generally must show that the force used was not justified by any legitimate law enforcement or prison management need, or was completely out of proportion to that need. See <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989) (arrestees); <u>Hudson</u>, 503 U.S. at 5-6 (convicted prisoners).

The amount of force that courts consider excessive depends on the specific fact situation. As a general rule, however, the force used by prison staff must be more than <i>de minimis</i> (very small or insignificant) to violate the Eighth



Amendment. See Hudson, 503 U.S. at 9-10. Courts disagree on what constitutes a *de minimis* use of force. Compare Hudson, 503 U.S. at 10 (kicks and punches resulting in bruises, swelling, loosened teeth and a cracked dental plate are not *de minimis*) and Riley v. Dorton, 115 F.3d 1159, 1168 (4th Cir. 1997) (sticking pen a quarter of an inch into a detainee's nose, threatening to rip it open and using medium force to slap his face is *de minimis*). If there is a legitimate need to use force and no intent to cause unnecessary harm, prison staff can use serious and even deadly force without violating the Constitution. See, e.g., Whitley v. Albers, 475 U.S. 312, 322-26 (1986) (use of shotgun in riot/hostage situation). However, when no such legitimate need exists, courts will be more likely to find an Eighth Amendment violation. See, e.g. Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002) (use of pepper spray on a prisoner who "had not jeopardized any person's safety or threatened prison security" provided valid basis for Eighth Amendment claim).

However, prisoners do not need to show a serious or permanent injury to establish an Eighth Amendment violation. The extent of the injury is simply one factor to consider in deciding whether staff acted maliciously and sadistically or in good faith. See Hudson, 503 U.S. at 7-9. Establishing malice does not require direct proof of what was in an officer's mind. Prison staff's actions alone, in light of the circumstances, may be sufficient to show malice. See Thomas v. Stalter, 20 F.3d 298, 302 (7th Cir. 1994). Moreover, sexual abuse or rape of a prisoner by staff is, by definition, a "malicious and sadistic" use of force. Smith v. Cochran, 339 F.3d 1205, 1212-13 (10th Cir. 2003).

# KNOW YOUR RIGHTS
# DISCIPLINARY SANCTIONS AND PUNISHMENT

### ACLU National Prison Project

**Important Note:** The law is always evolving.  If you have access to a prison law library, it is a good idea to confirm that the cases and statutes cited below are still good law. The date at the bottom of this page indicates when this information sheet was last updated.

## Examples of disciplinary punishment
Examples of disciplinary punishment include:  physical punishment, punitive segregation, losing visitation privileges, restricting visitation privileges, monetary restitution, water deprivation, reducing shower privileges and extending sentences.  You may not have received a disciplinary hearing before receiving this type of punishment or, if you did, it may not have been a fair hearing.  Unfortunately we do not have the resources to assist the many prisoners who have written us about these sorts of problems.  We can, however, provide the following information.

## Challenging the Nature of the Punishment You Received
Courts give deference to prison officials' decisions about disciplinary punishment. Punishments that fulfill legitimate penological interests (e.g., rehabilitation and crime prevention) are generally upheld.  The Supreme Court has provided four factors to decide whether prison regulations violate the Constitution.[1]  These factors are:  (1) whether the regulation has a "valid, rational connection" to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are "ready alternatives" to the regulation.[2]

For example, the Supreme Court has held that a prison administration's decision to restrict visitation for prisoners with two substance abuse violations served the legitimate goal of deterring drug and alcohol use within prison.[3]  The Court found that the punishment fulfilled the four evaluation factors listed above although the ban on visits from people other than clergy and attorneys on official business lasted a minimum of two years.[4]

Monetary restitution for property damage or other offenses that cost the prison money is

---

[1] See Turner v. Safley, 482 U.S. 78, 89-91 (1987).

[2] Id.

[3] Overton v. Bazzetta, 539 U.S. 126 (2003).

[4] Id.

Last updated: 11/05

1

a permissible form of punishment.[5]  Because many prisons have various "tiers" or "levels" of discipline, with different punishments for each, prisoners who commit the same violation may receive different punishments.  However, disparities in punishment do not necessarily violate constitutional rights unless the challenged punishment can be proven to be arbitrary.[6]

Although courts would find most punishments with legitimate penological interests constitutional, they have found punishments that involve physical abuse or degrading conditions of punitive confinement unconstitutional.[7]  Although courts are reluctant to interfere with the administration of prisons, they probably will dislike punishments that are disproportionate, or that offend idealistic concepts of dignity, civilized standards, humanity and decency.[8]  However, courts rarely find prison punishments disproportionate.[9]

**Challenging the Disciplinary Sanction Itself**
Prisoners may challenge disciplinary sanctions imposed on them under the Due Process Clause of the Fourteenth Amendment.[10]  The Supreme Court has said that inmates are not entitled to hearings (or other due process procedures) for disciplinary punishments unless (1) there is a state-created liberty interest in freedom from such punishment, and (2) the punishment imposes atypical and significant hardship.[11]  The Supreme Court has not fully defined "atypical and significant hardship."  Most circuits have found that administrative segregation without more does not rise to the level of an atypical and significant hardship.[12]  However, in Wilkinson v. Austin, the Supreme Court concluded that being sent to a supermax facility with limited human contact for an indefinite sentence and with no opportunity for parole does satisfy the "atypical and

---

[5] Longmire v. Guste, 921 F.2d 620, 623-24 (5th Cir. 1991).

[6] Phillips v. Gathright, 603 F.2d 219 (4th Cir. 1979).

[7] Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968) (Eighth Circuit enjoined the use of the strap until proper regulations and safeguards against abuse were implemented).

[8] Id.

[9] See, e.g., Savage v. Snow, 575 F.Supp. 828, 836 (S.D.N.Y. 1983) (upholding 90 days loss of good time and confinement in segregation for abuse of correspondence).

[10] Prisoners may also base their challenges on state law grounds, citing state prison regulations or statutes. State prisoners seeking to invalidate an unlawful criminal conviction or sentence must generally first exhaust their state court remedies, then seek federal court relief through a writ of habeas corpus. Only if the conviction or sentence is overturned may the prisoner-plaintiff then pursue a damages action for an unlawful conviction or sentence under 42 U.S.C. § 1983. See Heck v. Humphrey, 512 U.S. 477, 486, 114 S.Ct. 2364, 2372 (1994).

[11] Sandin v. Conner, 515 U.S. 472  (1995).

[12] See Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997); Mackey v. Dyke, 111 F.3d 460 (6th Cir. 1997); Pichardo v. Kinker, 73 F.3d 612 (5th Cir. 1996); Luken v. Scott, 71 F.3d 192 (5th Cir. 1995).

Last updated: 11/05

2

significant hardship" test.[13]

Once a prisoner asserts that the discipline imposed is significant and atypical, he or she must still establish that the procedures in place were inadequate.  To make this determination, a court must consider three factors: (1) the private interest involved; (2) the risk of an erroneous deprivation of such interest and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the burdens that different or additional procedural requirements would entail.[14] For example, although the Supreme Court concluded in Wilkinson v. Austin that being sent to a supermax facility *could* violate the Due Process clause, it ultimately concluded that the procedural safeguards were sufficient, and that there was no constitutional violation.  In reaching this decision, the Court put much emphasis on the fact that the prisoner was given notice and an opportunity to be heard, and was provided with many opportunities to challenge an erroneous Supermax placement.[15]

The Supreme Court has held that prisoners cannot sue for monetary damages under 42 U.S.C. § 1983 for loss of good time until they get their disciplinary conviction set aside through the prison appeal system or in state court.[16]

---

[13] 125 S.Ct. 2384, 2394-95 (2005).

[14] Id.

[15] Id. at 2395-98.

[16] Edwards v. Balisok, 520 U.S. 641 (1997).

Last updated: 11/05

3

...ing

FILED

1  COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983

2                                                    AUG 20 AM 11: 23

3  Name Soltero, Victor                    RICHARD W. WIEKING
                                           CLERK, U.S. DISTRICT COURT
4     (Last)              (First)          NORTHERN DISTRICT OF CALIFORNIA
                                                          (Initial)

5  Prisoner Number CDCR # K36340

6  Institutional Address Salinas Valley State Prison D9-173

7  PO. Box 1050, Soledad, CA 93960

8  ======================================================

9              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
10

11  Victor Daniel Soltero
   (Enter the full name of plaintiff in this action.)

12                    vs.                        Case No. 07 4256 PJH
                                                (To be provided by the clerk of court)

13  JOE MC GRATH; M.S. EVENS; G.

14  PONDERS & J. RUELAS; AND SOME       COMPLAINT UNDER THE
   OR ANY PERSON(S) NAMED THEREIN SUPPORTING    CIVIL RIGHTS ACT, (PR)
15  DOCUMENTS (SEE VCGCB CORRESPONDANCE    42 U.S.C §§ 1983
   INCLOSED AS EXIBIT "A" WHEN FUTURE
16  APPOINTED COUNSEL PER 42. USC 1988,
   AND/OR 42 USC. 1997e(d) MAY DEEM
17  APPROPRIATE
   (Enter the full name of the defendant(s) in this action)

18  [All questions on this complaint form must be answered in order for your action to proceed..]

19  I.   Exhaustion of Administrative Remedies

20       [Note: You must exhaust your administrative remedies before your claim can go

21       forward. The court will dismiss any unexhausted claims.]

22       A.   Place of present confinement _____

23       B.   Is there a grievance procedure in this institution?

24                  YES (X)    NO ( )

25       C.   Did you present the facts in your complaint for review through the grievance

26            procedure?

27                  YES (X)    NO ( )

28       D.   If your answer is YES, list the appeal number and the date and result of the appeal at
            IAB Case No: 0610668         LOCAL LOG NO. : SVSP 07-00214
            (AND APPEAL(S) FOUND AT GOVT.CLAIMS PROGRAM VCGCB
            400 R STREET 5th floor. SACRAMENTO, CALIFORNIA 95814.
   COMPLAINT
            CLAIM NO. G566872. (SEE EXIBIT A, RE:
            GOVT. CODE SECTION 955.4 SERVICE OF SUMMONS AND
            COMPLAINT).

FILED

07 AUG 20 AM 11:23

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

VICTOR DANIEL SOLTERO                )
                                     )
                    Plaintiff,       )    CASE NO. _____ 4256
                                     )
            VS.                      )    PRISONER'S
JOE McGRATH; M.S. EVENS; G. PONDERS; J.  )    APPLICATION TO PROCEED    PJH
EUGLAT; AND SOME OR ANY PERSON(S) NAMED  )    IN FORMA PAUPERIS
THEREIN SUPPORTING DOCUMENTS (SEE   )                                (PR)
VCGCB CORRESPONDENCE IN EXIBIT "A" OF )
COMPLAINT UNDER THE CIVIL RIGHTS ACT 42 USC. )
1983) WHOM FURTHER APPOINTED COUNSEL )
PER 42 USC. 1988 AND/OR      Defendant )
42 USC 1997 MAY DEEM APPROPIATE .   )

I, VICTOR DANIEL SOLTERO declare, under penalty of perjury that I am the plaintiff in

the above entitled case and that the information I offer throughout this application is true and correct.

I offer this application in support of my request to proceed without being required to prepay the full

amount of fees, costs or give security. I state that because of my poverty I am unable to pay the

costs of this action or give security, and that I believe that I am entitled to relief.

In support of this application, I provide the following information:

1.    Are you presently employed?                    Yes _____ No _X_

If your answer is "yes," state both your gross and net salary or wages per month, and give the name

and address of your employer:

Gross: _____ .    Net: _____

Employer: _____

_____

If the answer is "no," state the date of last employment and the amount of the gross and net salary

EXIBIT

Amend. 'A'

# CALIFORNIA DEPARTMENT OF CORRECTIONS

| NAME: SOLTERO | CDC #: K36340 | BED: D-9-166L |
|---|---|---|

## COMMITTEE ACTION SUMMARY

REFER TO THE CSR FOR A 45 DAY ASU EXTENSION TO COMPLETE THE INVESTIGATION RELATIVE TO ENEMY CONCERNS. RETAIN IN ASU PENDING CSR REVIEW AND COMPLETION OF THE INVESTIGATION. ESTABLISH MAX CUSTODY AND WG/PG OF D2D EFFECTIVE 10/16/2006, DUE TO THE SUBJECT BEING ON C STATUS PRIOR TO PLACEMENT IN ASU. CLEAR FOR SINGLE CELL AND WALK ALONE YARD. PSYCH IS CLEAR.

## COMMITTEE'S COMMENTS

Inmate SOLTERO appeared before Salinas Valley State Prison's (SVSP's) Administrative Segregation Unit (ASU) Institutional Classification Committee (ICC) today for his Initial ASU Review. SOLTERO stated that his health was good and was willing to proceed. SOLTERO received his 72-hour notice for the purpose of this review. Prior to committee reviewing and discussing this case, SOLTERO was introduced to the committee members.

According to SOLTERO'S CDC 114D, he was placed into SVSP's ASU on 10/16/2006 for: Protect the integrity of a preliminary investigation into threats the subject may have received on his life which would endanger the safety and security of the institution.. ICC notes SUBJECT'S ASU placement was ordered by Lieutenant J. Celaya. The placement was ordered due to protect the integrity of an ongoing investigation. The CDC 114D was issued to SUBJECT within 48 hours of ASU placement. Confidential information was not used for this ASU placement. The Administrative review was held by Captain G. Ponder . A staff Assistant was not assigned . SUBJECT did not request witnesses for the Initial ICC Hearing, therefore an Investigative Employee was not necessary. Visiting restrictions while housed in ASU were reviewed with SUBJECT.

The Mental Health Clinician spoke to him regarding his ASU placement noting SUBJECT is not a participant in the MHSDS at any LOC and current mental health status is stable. Continued ASU placement is not likely to result in decomposition of the inmate's mental health condition and SUBJECT is able to understand and participate in the classification hearing. Subject's central file does not reflect in cell violence or predatory behavior. Subject is clear for Single cell occupancy. The CDC forms 812, 812C, 127, 840, and MCSF have all been reviewed and or updated as necessary.

Based upon a review of SOLTERO'S CDC 114D, Central File, case factors, and through discussion with him, committee elects to: Refer to the CSR for a 45 day ASU extension to complete the investigation relative to Enemy Concerns. Retain in ASU pending CSR review and completion of the Investigation. Establish MAX Custody and WG/PG of D2D effective 10/16/2006, due to the Subject being on C status prior to placement in ASU. Clear for Single cell and walk alone yard. Psych is Clear. At the conclusion of this review, SOLTERO was informed of his Appeal Rights with regards to this committee's actions. SOLTERO acknowledged his understanding and disagreement with committee's actions. Soltero included the following statement, "I deny emphatically any legitimacy to the said information, on 114D of 10/16/2006. I have no recollection nor any knowledge of receiving a threat to my life or safety nor have I articulated, gestured, written, or indicated to any person(s) that I received any such threat(s) as stipulated there upon the 114D administrative segregation unit placement notice, dated f10/16/2006, Inmate hereby disqualifies above said ill-conceived notion(s)."

STAFF ASSISTANT Not Assigned: (Issues not complex and non-participant in MHSDS)

## INMATE CASE FACTORS

| CUSTODY | PS/LEVEL | WG/PG & EFF. DATE | RELEASE DATE | GPL | RECLASS | AGE | ETHNIC | TERMER | NEXT BPT & DATE |
|---|---|---|---|---|---|---|---|---|---|
| MAX | 161/IV | D2D - 10/16/2006 | MEPD 2/24/2021 | 12 (R) | 11/2/2006 | 32 | MEX | 1st | IPCH 10/2018 |

| RECEIVED | RECEIVED FROM & TYPE OF TX | RECEIVED CDC | COUNTY OF COMMITMENT | SENTENCE | RESTITUTION |
|---|---|---|---|---|---|
| 6/22/2004 | CAL Non-Adverse | 2/6/1997 | San Diego | 26 Years to Life | $7700.00 |

| COMMITMENT OFFENSE |
|---|
| 1st Degree Murder |

| PRIOR ARREST HISTORY | DISCIPLINARY HISTORY |
|---|---|
| I/O | Willfully Obstructing/Delaying PO, Battery on an Inmate W/SBI, Delaying a Peace Officer in the performance of Duty, Refusing to Submit to Urinalysis, Possession of Dangerous Contraband, Flooding, Att to introduce contraband into Ad Seg, Participation in a Riot |

| SEX OFFENSES | ARSON OFFENSES | ESCAPES |
|---|---|---|
| Clear as of 10/2/2006 | Clear as of 10/2/2006 | Clear as of 10/2/2006 |

| ENEMIES | GANG/TIP | CONFIDENTIAL |
|---|---|---|
| Noted on CDC 812 & CDC 812C | No Gang | Noted & Reviewed |

| MEDICAL | TB - DATE 128C | DENTAL | DPP | SUBSTANCE ABUSE |
|---|---|---|---|---|
| Full Duty | 22 - 5/3/2006 | 3 | N/A | Alcohol, Cocaine, Marijuana |

| PSYCH | MDO | DDP |
|---|---|---|
| Clear | Doesn't Meet MDO Criteria | NCF |

| HOUSING | CELL STATUS | CAMP, MSF, CCF, SAP, CCRC, REST. CENTER, & MCCF ELIGIBILITY |
|---|---|---|
| 180 Design (A1) | Single Cell | Camp Eligible: No VIO - LIF | CCF Eligible: No VIO - LIF | CCRC Eligible: No VIO - LIF |
| | | MSF Eligible: No VIO - LIF | SAP Eligible: No VIO - LIF | Rest. Center Eligible: No VIO - LIF |
| | | MCCF Eligible: No - | | |

| FFTTP | HWD | JOB ASSIGNMENT |
|---|---|---|
| US Citizen | None | Unassigned |

## COMMITTEE MEMBERS

MEMBERS

B.F. Rankin, FC; C. Sanders, PhD

CHAIRPERSON
M. Moore III, CDW (A)

RECORDER
V. Solis, CCII (Sup)

10-26-07

INITIAL ASU REVIEW

Committee: ICC

EXIBIT

Amend. 'B'

# CALIFORNIA DEPARTMENT OF CORRECTIONS

| NAME: SOLTERO | CDC #: K36340 | BED: C-8-225L |
|---|---|---|

## COMMITTEE ACTION SUMMARY

**RETAIN SVSP IV 180. PLACE IN BMU PROGRAM. PLACE IN STEP 1. CONTINUE CLO B CUSTODY, CONTINUE WG PG C/C EFFECTIVE 12/7/06, REMOVE FROM ALL WL, DOUBLE CELL APPROVED, PSYCH IS CLEAR. TABE 12.0. ANNUAL 2/28/07. REFUSED TO SIGN EXPECTATIONS 128B.**

## COMMITTEE'S COMMENTS

Inmate SOLTERO declined to appear before Salinas Valley State Prison's (SVSP's) Facility C Unit Classification Committee (UCC) today for his Program Review and therefore UCC was held in absentia. SOLTERO did receive his 72-hour notice for the purpose of this review.

Soltero was received from ASU, recommending BMU placement. Per Operational Procedure 11C states in part; #3. Organized Criminal Activity, any pattern of behavior, which indicates an individual's participation in organized criminal activity, shall be grounds for placement in the BMU program. Organized criminal activity is defined as behavior, which indicates an inmate's participation in a prison or street gang. Examples of this type of behavior include, but not limited to; Participating in gang related riots, Participating in gang related batteries or physical assaults, Distribution of property, material or items in an effort to generate revenue for the purpose of financing/furthering the prison gang or street gang's illegal activity, Evidence of attempts to recruit others to participate in prison gang or street gang's activity or Participating directly or indirectly in a misconduct that could be related to a specific type of gang behavior. Soltero received an RVR dated 5/3/02 for Participation in a Riot. According to the circumstances the Riot was between white and hispanic inmates. Per Operational Procedure 11 SHU Offense as outlined in CCR 3341.5. If an inmate has been found guilty of an offense for which a determinate term of confinement has been assessed, or is deemed to be a threat to the safety of others or the security of the institution, the inmate may be referred to a classification committee for placement in the BMU. This may be from general population (GP) or Administrative Segregation (ASU). Soltero received an RVR dated 7/5/04 for Battery on an Inmate with SBI division A1(3) offense and found guilty and received a 12 month SHU term. Soltero also received an RVR dated 5/3/02 for Active participation in a White/Hispanic Riot, a division d offense, found guilty and received a 4 month SHU term. Soltero was origannly place in the BMU program on 8/23/06, however he refused to participate. On 10/16/06, Soltero was placed in ASU pending an investigation that you may of received threats to your life. The investigation was completed and you were released from ASU by ICC on 12/7/06 the BMU Program.

Based on this information inmate meets the criteria for BMU placement. Soltero has been informed of the steps for completion of the BMU program as well as being informed he will need to complete an available anger management program such as, Breaking Barriers, Cage your Rage or Framework for Recovery. Soltero was advised of the process for the reimplementation of his privileged/placement, which may be restored. Soltero's manner and verbal interaction with UCC on the issues of his case convinced this committee he fully understood without staff assistant's input. Soltero was advised of the process for the reimplementation of his privileged/placement, which may be restored. UCC informed Soltero he must remain disciplinary free during the entire program and complete the Individual Treatmen Plan (ITP) as directed before being released from BMU. As part of Soltero's ITP, he was placed in Cage your Rage and Narcotics Anonymous (NA) for Step 1 of his treatment plan. Soltero refused to attend today's UCC refused to sign the 128B 'Behavioral Modification Unit (BMU) Step Process, Privileges and Expectations' chrono. Soltero did not agree with committee and was advised of his right to appeal this or any decision/action, which might have an adverse effect on him by filing a CDC 602. There are no further classification concerns at this time and his next scheduled classification will be 30 day's from today's UCC action for program review.

Soltero was originally placed into the BMU program on 8/23/06. Soltero was provided the oppurtunity on numerous occassions to sign the Behavioral Modification Unit Step Process, Privileges and Expectations 128B, however he refused and as a result was placed in Ad-Seg pending an investigation.

The Investigation into threats the subject may have received on his life, which could endanger the safety and security of the institution, and possible enemy concerns, was completed by Captain G. Ponder, see confidential memo dated 11-27-2006. Officer Salopek completed a 128B (dated 12/5/06) stating SOLTERO has no safety concerns and is cleared to return to Facility C BMU program. Facility Captain (A) J. Celaya was contacted and stated SOLTERO was cleared to return to Facility C BMU. His Central file does not reflect a pervasive pattern of violence or predatory behavior toward cellmates, and the confidential memo dated 11-27-2006 states that there is no known enemies and he can be housed with "inmates in similar situations and the normal Ad-Seg process for double celling". Therefore, he is cleared for double cell occupancy. He is not a participant in the MHSDS and has a GPL 12 ®. The CDC 812, 812C, 127, 840 and MCSF have been reviewed and updated. CSR 128G dated 9/21/04 issues have been addressed. The RVR from Calipatria State Prison (05-04-C-024) was dismissed and a 128B noting this has been placed in the file.

Based upon a review of SOLTERO'S Central File and case factors committee elects to: Retain SVSP IV 180. Place in BMU Program. Place in Step 1. Continue CLO B Custody, Continue WG PG C/C Effective 12/7/06, Remove from All WL, Double Cell Approved, Psych is Clear. TABE 12.0. Annual 2/28/07. Refused to Sign Expectations 128B.

At the conclusion of this review, SOLTERO will be informed of his Appeal Rights with regards to this committee's actions.

## INMATE CASE FACTORS

| CUSTODY | PS/LEVEL | WG/PG & EFF. DATE | RELEASE DATE | GPL | RECLASS | AGE | ETHNIC | TERMER | NEXT BPT & DATE |
|---|---|---|---|---|---|---|---|---|---|
| CLOB | 16I/IV | CC - 12/7/2006 | MEPD 2/24/2021 | 12 (R) | 1/12/2007 | 32 | MEX | 1st | IPCH 10/2018 |

| RECEIVED | RECEIVED FROM & TYPE OF TX | | RECEIVED CDC | COUNTY OF COMMITMENT | | SENTENCE | | RESTITUTION |
|---|---|---|---|---|---|---|---|---|
| 6/22/2004 | CAL Non-Adverse | | 2/6/1997 | San Diego | | 26 Years to Life | | $7700.00 |

| COMMITMENT OFFENSE |
|---|
| 1st Degree Murder |

| PRIOR ARREST HISTORY | DISCIPLINARY HISTORY |
|---|---|
| I/O | Willfully Obstructing/Delaying PO, Battery on an Inmate W/SBI, Delaying a Peace Officer in the performance of Duty, Refusing to Submit to Urinalysis, Possession of Dangerous Contraband, Flooding, Att to introduce contraband into Ad Seg, Participation in a Riot,Recurring failure to meet program expectations (PENDING), Willfully resisting a Peace Officer (PENDING) |

| SEX OFFENSES | ARSON OFFENSES | ESCAPES |
|---|---|---|
| Clear as of 12/12/2006 | Clear as of 12/12/2006 | Clear as of 12/12/2006 |

| ENEMIES | GANG/TIP | CONFIDENTIAL |
|---|---|---|
| Noted on CDC 812 & CDC 812C | | Noted & Reviewed |

| MEDICAL | TB - DATE 128C | DENTAL | DPP | SUBSTANCE ABUSE |
|---|---|---|---|---|
| Full Duty | 22 - 5/3/2006 | 3 | N/A | Alcohol, Cocaine, Marijuana |

| PSYCH | MDO | DDP |
|---|---|---|
| Clear | Doesn't Meet MDO Criteria | NCF |

| HOUSING | CELL STATUS | CAMP, MSF, CCF, SAP, CCRC, REST. CENTER, & MCCF ELIGIBILITY | | |
|---|---|---|---|---|
| 180 Design (A1) | Double Cell | Camp Eligible: No VIO - LIF | CCF Eligible: No VIO - LIF | CCRC Eligible: No VIO - LIF |
| | | MSF Eligible: No VIO - LIF | SAP Eligible: No VIO - LIF | Rest. Center Eligible: No VIO - LIF |
| | | MCCF Eligible: No VIO - LIF | | |

| FPTTP | HWD | JOB ASSIGNMENT |
|---|---|---|
| US Citizen | None | Unassigned |

## COMMITTEE MEMBERS

EXIBIT
Amend. 'C'

# CALIFORNIA DEPARTMENT OF CORRECTIONS

NAME: SOLTERO                    CDC #: K36340                    BED: C-8-228U

## COMMITTEE ACTION SUMMARY

CONTINUE BMU PROGRAM. CONTINUE STEP 1. CONTINUE CLO B CUSTODY, CONTINUE WG PG C/C EFFECTIVE 8/23/06, VOLUNTARY UNASSIGED. DOUBLE CELL APPROVED, PSYCH IS CLEAR.

## COMMITTEE'S COMMENTS

Inmate SOLTERO declined to appear before Salinas Valley State Prison's (SVSP's) Facility C Unit Classification Committee (UCC) today for his Program Review and therefore UCC was held in absentia. SOLTERO did receive his 72-hour notice for the purpose of this review.

UCC elected to conduct a 30 day review of Soltero's progress in the BMU program. Due to Administrative error Soltero was not seen within the 30 day time period as specified in OP 11C. However Soltero refused to attend today's Committee, and continue's to refuse to participate in the program. Soltero was received from Facility C, recommending BMU placement. Per Operational Procedure 11C states in part; #3. Organized Criminal Activity, any pattern of behavior, which indicates an individual's participation in organized criminal activity, shall be grounds for placement in the BMU program. Organized criminal activity is defined as behavior, which indicates an inmate's participation in a prison or street gang. Examples of this type of behavior include, but not limited to; Participating in gang related riots, Participating in gang related batteries or physical assaults, Distribution of property, material or items in an effort to generate revenue for the purpose of financing/furthering the prison gang or street gang's illegal activity, Evidence of attempts to recruit others to participate in prison gang or street gang's activity or Participating directly or indirectly in an misconduct that could be related to a specific type of gang behavior. Soltero received an RVR dated 5/3/02 for Particiapation in a Riot. According to the circumstances the Riot was between white and hispanic inmates. Per Operational Procedure 11 SHU Offense as outlined in CCR 3341.5. If an inmate has been found guilty of an offense for which a determinate term of confinement has been assessed, or is deemed to be a threat to the safety of others or the security of the institution, the inmate may be referred to a classification committee for placement in the BMU. This may be from general population (GP) or Administrative Segregation (ASU). Soltero received an RVR dated 7/5/04 for Battery on an Inmate with SBI division A1(3) offense and found guilty and received a 12 month SHU term. Soltero also received an RVR dated 5/3/02 for Active participation in a White/Hispanic Riot, a division d offense, found guilty and received a 4 month SHU term.

Based on this information inmate meets the criteria for BMU placement. Soltero has been informed of the steps for completion of the BMU program as well as being informed he will need to complete an available anger management program such as, Breaking Barriers, Cage your Rage or Framework for Recovery. Soltero was advised of the process for the reimplementation of his privileged/placement, which may be restored. Soltero's manner and verbal interaction with UCC on the issues of his case convinced this committee he fully understood without staff assistant's input. Soltero was advised of the process for the reimplementation of his privileged/placement, which may be restored. UCC informed Soltero he must remain disciplinary free during the entire program and complete the Individual Treatmen Plan (ITP) as directed before being released from BMU. As part of Soltero's ITP, he was placed in **Cage Your Rage** – *an Inmate's Guide to Anger Control* helps offenders recognize their angry feelings, learn their causes, and deal with them in a responsible way. The book's easy-to-read style and workbook format make it an ideal self-study program for offenders and Narcotics Anonymous (NA) is a non-profit fellowship or society of men and women for whom drugs had become a major problem. There is only one requirement for membership, the desire to stop using. Soltero was advised of his right to appeal any decision/action, he does not agree within 30 days pursuant to CCR Title 15, Section 3084.1 There are no further classification concerns at this time and his next scheduled classification will be 30 day's from today's UCC action for program review.

Based upon a review of SOLTERO'S Central File and case factors committee elects to: Continue BMU Program. Continue Step 1. Continue CLO B Custody, Continue WG PG C/C Effective 8/23/06, Voluntary Unassigned. Double Cell Approved, PSYCH is Clear.

At the conclusion of this review, SOLTERO will be informed of his Appeal Rights with regards to this committee's actions.

## INMATE CASE FACTORS

| CUSTODY | PS/LEVEL | WG/PG & EFF. DATE | RELEASE DATE | GPL | RECLASS | AGE | ETHNIC | TERMER | NEXT BPT & DATE |
|---|---|---|---|---|---|---|---|---|---|
| CLOB | 161/IV | CC - 8/23/2006 | MEPD 2/24/2021 | 12 (R) | 11/2/06 | 32 | MEX | 1st | IPCH 10/2018 |

| RECEIVED | RECEIVED FROM & TYPE OF TX | RECEIVED CDC | COUNTY OF COMMITMENT | SENTENCE | RESTITUTION |
|---|---|---|---|---|---|
| 6/22/2004 | CAL Non-Adverse | 2/6/1997 | San Diego | 26 Years to Life | $7700.00 |

| COMMITMENT OFFENSE |
|---|
| 1st Degree Murder |

| PRIOR ARREST HISTORY | DISCIPLINARY HISTORY |
|---|---|
| I/O | Willfully Obstructing/Delaying PO, Battery on an Inmate W/SBI, Delaying a Peace Officer in the performance of Duty, Refusing to Submit to Urinalysis, Possession of Dangerous Contraband, Flooding, Att to introduce contraband into Ad Seg, Participation in a Riot |

| SEX OFFENSES | ARSON OFFENSES | ESCAPES |
|---|---|---|
| Clear as of 10/2/2006 | Clear as of 10/2/2006 | Clear as of 10/2/2006 |

| ENEMIES | GANG/TIP | CONFIDENTIAL |
|---|---|---|
| Noted on CDC 812 & CDC 812C | No Gang | Noted & Reviewed |

| MEDICAL | TB - DATE 128C | DENTAL | DPP | SUBSTANCE ABUSE |
|---|---|---|---|---|
| Full Duty | 22 - 5/3/2006 | 3 | N/A | Alcohol, Cocaine, Marijuana |

| PSYCH | MDO | DDP |
|---|---|---|
| Clear | Doesn't Meet MDO Criteria | NCF |

| HOUSING | CELL STATUS | CAMP, MSF, CCF, SAP, CCRC, REST. CENTER, & MCCF ELIGIBILITY | | |
|---|---|---|---|---|
| 180 Design (A1) | Double Cell | Camp Eligible: No VIO - LIF | CCF Eligible: No VIO - LIF | CCRC Eligible: No VIO - LIF |
| | 7/2/2004 | MSF Eligible: No VIO - LIF | SAP Eligible: No VIO - LIF | Rest. Center Eligible: No VIO - LIF |

EXIBIT
Amend. 'D'

STATE OF CALIFORNIA    DEPARTMENT OF CORRECTIONS
ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE
CDC 114-D (Rev 10/98)

| DISTRIBUTION | |
|---|---|
| WHITE - CENTRAL FILE | CANARY - WARDEN |
| BLUE - INMATE (2ND COPY) | PINK - HEALTH CARE MGR |
| GREEN - ASU | GOLDENROD - INMATE (1ST COPY) |

Salinas Valley State Prison    Facility 'C'

| INMATE'S NAME | CDC NUMBER |
|---|---|
| Soltero | K-36340 |

## REASON(S) FOR PLACEMENT *(PART A)*

[X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

[ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

[X] ENDANGERS INSTITUTION SECURITY    [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:  You, Inmate Soltero (K-36340), were originally placed in Administrative Segregation Unit (ASU) based on the Institution's inability to determine the threat that you pose to inmates or staff, due to your refusal to participate in the interview process. An investigation was completed on 05-01-07, and it was determined that your refusal to participate in the interview process posed a threat to Facility "C" returning to normal program. You will be retained in ASU following the completion of the disciplinary process and pending transfer to an alternate institution. As a result of this retention, you are a threat the institutional security. As a result of this retention, your credit earning, custody, and visiting status are subject to change. Inmate Soltero [is] [is not] a participant in the Mental Health Services Delivery System. Retention ordered by Lieutenant J. Stevenson.

| [ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL) | | [ ] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: / / | |
|---|---|---|---|
| DATE OF ASU PLACEMENT 5-8-07 | SEGREGATION AUTHORITY'S PRINTED NAME J. Stevenson | SIGNATURE | TITLE Lieutenant |
| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE    SIGNATURE | STAFF'S TITLE |
| [ ] INMATE REFUSED TO SIGN | | INMATE SIGNATURE | CDC NUMBER |

## ADMINISTRATIVE REVIEW *(PART B)*

*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|
| STAFF ASSISTANT'S NAME | TITLE | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |

### IS THIS INMATE:

| | | |
|---|---|---|
| LITERATE? | [ ] YES [ ] NO | EVIDENCE COLLECTION BY IE UNNECESSARY [ ] YES [ ] NO |
| FLUENT IN ENGLISH? | [ ] YES [ ] NO | DECLINED ANY INVESTIGATIVE EMPLOYEE [ ] YES [ ] NO |
| ABLE TO COMPREHEND ISSUES? | [ ] YES [ ] NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS [ ] YES [ ] NO |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | [ ] YES [ ] NO | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED [ ] YES |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | [ ] YES | |

Any "NO" requires SA assignment

[ ] NOT ASSIGNED

[ ] NOT ASSIGNED

Any "NO" may require IE assignment

## INMATE WAIVERS

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER    [ ] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

| [ ] NO WITNESSES REQUESTED BY INMATE | INMATE SIGNATURE | DATE |
|---|---|---|

## WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |

**DECISION:** [ ] RELEASE TO UNIT/FACILITY_____    [ ] RETAIN PENDING ICC REVIEW    [ ] DOUBLE CELL    [ ] SINGLE CELL PENDING ICC

REASON FOR DECISION:

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | | DATE OF REVIEW |

**See Chronological Classification Review document (CDC 128-G) for specific hearing information**

EXIBIT

Amend. 'E'

Selinas Valley State Prison                    Facility 'C'

| | | DISTRIBUTION: | |
|---|---|---|---|
| | | WHITE - CENTRAL FILE | CANARY - WARDEN |
| | | BLUE - INMATE (2ND COPY) | PINK - HEALTH CARE MGR |
| | | GREEN - ASU | GOLDENROD - INMATE (1ST COPY) |

| INMATE'S NAME | CDC NUMBER |
|---|---|
| Soltero | K-36340 |

## REASON(S) FOR PLACEMENT *(PART A)*

[X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

[ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

[X] ENDANGERS INSTITUTION SECURITY          [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT. Inmate Soltero, you are being placed in Administrative Segregation (ASU) on 10-16-06 to protect the integrity of a preliminary investigation into information indicating that you may have received threats to your life which would endanger the safety and security of the institution, refer to CDC 128-B dated 10-16-06. This investigation has been assigned to Officer Lieutenant J. Celaya and shall be completed by 01-16-07. You will remain in ASU pending the completion of this investigation and ICC review. This placement is ordered by Lieutenant J. Celaya, and may affect your custody level, credit earning, privilege group and visiting status. Inmate Soltero is not a participant in the Mental Health Services Delivery System at any level of care.

| [ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL) | | [ ] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: | | / / |
|---|---|---|---|---|

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | | TITLE |
|---|---|---|---|---|
| 10-16-06 | J. Celaya | | | Lieutenant |

| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
|---|---|---|---|---|
| 10/16/06 | 1430 | | | C/O |

| [ ] INMATE REFUSED TO SIGN | INMATE SIGNATURE | | CDC NUMBER |
|---|---|---|---|

## ADMINISTRATIVE REVIEW *(PART B)*
*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|
| STAFF ASSISTANT'S NAME | TITLE | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |

### IS THIS INMATE:

| | | | | | |
|---|---|---|---|---|---|
| LITERATE? | [X] YES [ ] NO | EVIDENCE COLLECTION BY IE UNNECESSARY | [X] YES | [ ] NO |
| FLUENT IN ENGLISH? | [X] YES [ ] NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | [ ] YES | [X] NO |
| ABLE TO COMPREHEND ISSUES? | [X] YES [ ] NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | [X] YES | [ ] NO |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | [X] YES [ ] NO | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | [ ] YES | |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | [ ] YES | | | |

Any "NO" requires SA assignment

[ ] NOT ASSIGNED

Any "NO" may require IE assignment

[X] NOT ASSIGNED

## INMATE WAIVERS

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER          [ ] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

| [ ] NO WITNESSES REQUESTED BY INMATE | INMATE SIGNATURE | DATE |
|---|---|---|
| | RTS | 10/17/06 |

## WITNESSES REQUESTED FOR HEARING

| WITNESS NAME | TITLE/CDC NUMBER | WITNESS NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| | | WITNESS NAME | TITLE/CDC NUMBER |
| NONE | | WITNESS NAME | TITLE/CDC NUMBER |

**DECISION:** [ ] RELEASE TO UNIT/FACILITY____    [X] RETAIN PENDING ICC REVIEW    [ ] DOUBLE CELL    [X] SINGLE CELL PENDING ICC

REASON FOR DECISION:

Escape risk pending ICC

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| | CAPT | 10/17/06 | 1102 | |
| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME *(if necessary)* | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE *(if necessary)* | | DATE OF REVIEW |

**See Chronological Classification Review document (CDC 128-G) for specific hearing information**

EXIBIT
Amend. 'F'

# CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION

NAME: SOLTERO          CDCR #: K36340          BED: D-9-173L

## COMMITTEE ACTION SUMMARY

REFER TO THE CSR FOR A SUBSEQUENT 45 DAY ASU EXTENSION TO COMPLETE THE DISCIPLINARY PROCESS FOR SOME NON-SHU'ABLE OFFENSES AND SUBSEQUENT TRANSFER. RETAIN IN ASU PENDING CSR REVIEW AND COMPLETION OF THE DISCIPLINARY PROCESS. CONTINUE SINGLE CELL AND WALK ALONE YARD. PSYCH IS CLEAR.

## COMMITTEE'S COMMENTS

Inmate SOLTERO declined to appear before Salinas Valley State Prison's (SVSP's) Administrative Segregation Unit (ASU) Institutional Classification Committee (ICC) today for his Program Review and therefore ICC was held in absentia. SOLTERO did receive his 72-hour notice for the purpose of this review. According to SOLTERO'S CDC 114D, he was placed into SVSP's ASU on 5/8/2007 for: On 03/26/2007, the subject was placed into ASU pending completion an investigation. Subsequently, it was determined that the subject poses a significant threat and is being retained pending transfer to an alternate institution..

Based upon a review of SOLTERO'S CDC 114D, Central File, and case factors committee elects to: Refer to the CSR for a subsequent 45 day ASU extension to complete the disciplinary process for some non-SHU'able offenses and subsequent transfer. Retain in ASU pending CSR review and completion of the disciplinary process. Continue Single Cell and Walk Alone Yard. Psych is Clear.

At the conclusion of this review, SOLTERO will be informed of his Appeal Rights with regards to this committee's actions.

## INMATE CASE FACTORS

| CUSTODY | PS/LEVEL | WG/PG & EFF DATE | RELEASE DATE | GPL | RECLASS | AGE | ETHNIC | TERMER | NEXT BPT & DATE |
|---|---|---|---|---|---|---|---|---|---|
| MAX S | 161/IV | D2D - 3/26/2007 | MEPD 4/25/2021 | 12 (R) | 3/1/2008 | 32 | MEX | 1st | IPCH 10/2018 |

| RECEIVED SVSP | RECEIVED FROM & TYPE OF TX | RECEIVED CDCR | COUNTY OF COMMITMENT | SENTENCE | RESTITUTION |
|---|---|---|---|---|---|
| 6/22/2004 | CAL - Non-Adverse | 2/6/1997 | San Diego | 26 Years to Life | $7700.00 |

| COMMITMENT OFFENSE |
|---|
| 1st Degree Murder |

| PRIOR ARREST HISTORY | DISCIPLINARY HISTORY |
|---|---|
| I/O | Willfully Obstructing/Delaying PO, Battery on an Inmate W/SBI, Delaying a Peace Officer in the performance of Duty, Refusing to Submit to Urinalysis, Possession of Dangerous Contraband, Flooding, Att to introduce contraband into Ad Seg, Participation in a Riot, Recurring failure to meet program expectations (PENDING), Willfully resisting a Peace Officer (PENDING) |

| SEX OFFENSES | ARSON OFFENSES | ESCAPES |
|---|---|---|
| Clear as of 2/5/2007 | Clear as of 2/5/2007 | Clear as of 2/5/2007 |

| ENEMIES | GANG/TIP | CONFIDENTIAL |
|---|---|---|
| Noted on CDC 812 & CDC 812C | Southerner | Noted & Reviewed |

| MEDICAL | TB - DATE 128C | DENTAL | DPP | SUBSTANCE ABUSE |
|---|---|---|---|---|
| Full Duty | 22 - 3/26/2007 | 3 | N/A | Alcohol, Cocaine, Marijuana |

| PSYCH | MDO | DDP |
|---|---|---|
| Clear | Doesn't Meet MDO Criteria | NCF |

| HOUSING | CELL STATUS | CAMP, MSF, CCF, SAP, CCRC, REST. CENTER, & MCCF ELIGIBILITY / VIO REVIEW | | |
|---|---|---|---|---|
| 180 Design (A1) | Single Cell 4/5/2007 Safety and security of the institution per ICC dated 4-5-07. | Camp Eligible: No VIO - LIF | SAP Eligible: No VIO - LIF | MCCF Eligible: No VIO - LIF |
| INTEGRATION | | MSF Eligible: No VIO - LIF | CCRC Eligible: No VIO - LIF | |
| | | CCF Eligible: No VIO - LIF | Rest. Center Eligible: No VIO - LIF | VIO Review Date: |

| FPTTP | HWD | JOB ASSIGNMENT |
|---|---|---|
| US Citizen | None | Unassigned |

## COMMITTEE MEMBERS

MEMBERS

CHAIRPERSON
R. Grounds, CDW (A)

G. Ponder, FC;  J. Scaramozzino, Sr. Psychologist

RECORDER
V. Solis, CCII (Sup)

Committee Date: 7/5/2007          **PROGRAM REVIEW (ABSENTIA)**          Committee: ICC

Typed By:   - Distribution: C-File & Inmate          SALINAS VALLEY STATE PRISON          Classification Chrono CDCR 128G (Rev: 4/07)

EXIBIT
Amend 'G'

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| K-36340 | SOLTERO | | | S.V.S.P. | C8-225 | C07-03-0094 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| C.C.R. §3007 | Disorderly Conduct | Fac "C" Build. 8 | 03-23-07 | 1230 Hrs. |

CIRCUMSTANCES    On March 23, 2007, Inmate SOLTERO, (K-36340, C8-223), was "inciting", SOLTERO challenged the legality to the Behavior Modification Unit (BMU) program. During my initial meeting with Inmate HART, seated in the dayroom, SOLTERO began shouting through his cell door to Inmate SNEEDE about how the BMU program and curriculum were unlawful. SOLTERO adamantly went on to say that the book, "The Epictetus Club" was "Full of shit". Afterwards, he loudly shouted, "Fuck Epictetus!" SOLTERO is currently housed in the Behavior Modification Unit (BMU) for Organized Criminal Gang activity. Per the California Code Regulations, Title 15, SOLTERO is in violation of Section 3005(c) for willfully attempting to incite SNEEDE and other inmates to challenge the legality of the BMU program. In addition to inciting inmates, SOLTERO is in violation of Section 3005(a) for disobeying regulations, procedures and participating in an insightful manner that could lead to disorder;    (Con't See CDC-115-C)

Inmate SOLTERO ☒ [is not] a participant in the Mental Health Services Delivery System and is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ R. Mott, BMU Facilitator | 3-27-07 | BMU | |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| ▶ | 3-27-07 | DATE | LOC. |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | | HEARING REFERRED TO |
|---|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | E 31-60 | 3/28/07 | ▶ T. Selby | ☐ HO ☒ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) ▶ | DATE 0/06/07 | TIME 2000 | TITLE OF SUPPLEMENT Copy of I E |
|---|---|---|---|---|
| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | BY: (STAFF'S SIGNATURE) ▶ |

DATE 4/6/07  TIME 1700

HEARING

**Plea:** The charges were read aloud as written to Inmate Soltero, who acknowledged understanding the charges and who entered a plea of Not Guilty.

**Findings:** Inmate Soltero was found **Not Guilty** of violating CCR§ 3007; specifically, "Disorderly Conduct," a Division "E" offense (CCR§ 3323(g)(7)).

**Disposition:** Dismissed in the interest of justice.

**Additional Disposition:** None.

**Classification Referral:** Referred to UCC for program review.

Disposition continued on CDC 115C

REFERRED TO ☐ CLASSIFICATION    ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| J. Celaya, Lieutenant | ▶ | 7/12/07 | 1505 |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| ▶ G. Ponder, Captain | 7/13/07 | ▶ M. Moore | 7/18/07 |

| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | DATE 07/23/07 | TIME 1800 |
|---|---|---|---|

CDC 115 (7/88)

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**                                    PAGE____OF____

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|------------|---------------|------------|-------------|--------------|
| K-36340 | SOLTERO | 07-03-0024 | S.V.S.P. | 03-23-07 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☒ 115 CIRCUMSTANCES | ☐ HEARING | ☐ IE REPORT | ☐ OTHER_____ |

con't..and (b) for disobeying verbal instructions from the BMU Facilitator.  R. Mott, to program
in "Cage Your Rage": An inmates Guide to Anger Control, as outlined in his ITP. Recently, on
March 21, 2007, SOLTERO refused to program when instructed.  He cited that he would not program
as long as he had to sign the Behavior Modification Unit (BMU) Step Process, Privilege and
Expectation chrono. Likewise, SOLTERO was issued a CDC-115 for, "Recurring Failure to Meet
Program Expectations".  on January 11, 2007, SOLTERO refused to attend several UCC hearings
on March 07, 2007 and February 06, 2007, as scheduled.  SOLTERO'S incitefulness is detrimental
to the success of the BMU program and to the BMU inmates that choose to program in an effort
to modify their thinking and behavior.  SOLTERO'S presence in the BMU program and primarily
in C8 "C" Pod, remains dysfunctional and presents a clear and present danger to the BMU staff
and correctional officer charged with conducting an orderly and functional learning environment.

INMATE COPY

R. Mott, BMU Facilitator

| SIGNATURE OF WRITER | | DATE SIGNED |
|---------------------|---|-------------|
| | | 3-27-07 |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | | 04/06/07 | 2000 |

CDC 115-C (5/95)                                                      OSP 99 25082

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS
## SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| K-36340 | SOLTERO | C.C.R. §3005(b) | 03-23-07 | S.V.S.P. | 07-03-0024 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☒ NO

### POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | |
| ☐ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|
| | N/A |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I REVOKE** my request for postponement. | ▶ N/A | |

### STAFF ASSISTANT

| STAFF ASSISTANT | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ REQUESTED   ☐ WAIVED BY INMATE | ▶ | |

| ☐ ASSIGNED | DATE | NAME OF STAFF |
|---|---|---|
| | | |

☒ NOT ASSIGNED    REASON DNMC PER TITLE 15 3315(b)

### INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☒ REQUESTED   ☐ WAIVED BY INMATE | ▶ [signature] | 4/6/07 |

| ☐ ASSIGNED | DATE | NAME OF STAFF |
|---|---|---|
| | | |

| ☐ NOT ASSIGNED | REASON |
|---|---|
| | |

EVIDENCE / INFORMATION REQUESTED BY INMATE:

### WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☐ REPORTING EMPLOYEE   ☐ STAFF ASSISTANT   ☐ INVESTIGATIVE EMPLOYEE   ☐ OTHER _____   ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

INMATE COPY

| | INVESTIGATOR'S SIGNATURE | DATE |
|---|---|---|
| | ▶ | |

| | BY: (STAFF'S SIGNATURE) | | TIME | DATE |
|---|---|---|---|---|
| ☐ COPY OF CDC 115-A GIVEN INMATE | ▶ | | 2000 | 04/06/07 |

CDC 115-A (7/88)          — *If additional space is required use supplemental pages* —          OSP  03 74845

• STATE OF CALIFORNIA                                           DEPARTMENT OF CORRECTIONS
RULES VIOLATION REPORT - PART C                                        PAGE __1__ OF __1__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-36340 | SOLTERO | C07-03-0024 | SVSP | 04-16-07 |

| ☐SUPPLEMENTAL | ☐CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☐HEARING | ☒I.E .REPORT | ☐OTHER |
|---|---|---|---|---|---|

On 04-10-07, I was assigned as Investigative Employee for CDC-115 Rules Violation Report, Log Number C07-03-0024. I advised Inmate SOLTERO of my assignment and informed him that as the Investigative Employee, my duties are to act as a fact finder for the Senior Hearing Officer. Inmate SOLTERO acknowledged that he understood my role as the Investigative Employee and has indicated no objections to my assignment in this capacity. My report is as follows:

**Defendants Statement:** On this date, 04-14-07, I conducted an interview with Inmate - **SOLTERO (K 36340)** regarding the charged offense. Inmate SOLTERO provided me with the following questions: "I wasn't yelling out about the BMU Program and I want to know what R. Mott has to say and if his statement is true, about me being dysfunctional and presenting clear and present danger to staff and the BMU program, and if I can have an absentia UCC hearing because of my chronic asthma."

**Reporting Employee's Statement::** On this date, 04-16-07, I interviewed the reporting employee, BMU Coordinator R. Mott regarding the charges and his recollection of the events of that day. BMU Coordinator Mott offered the following statement, "Inmate SOLTERO was being disruptive on the day stated in my report and has been given several opportunities to program. He was yelling out about the, 'Epictetus club' saying its full of shit. SOLTERO'S inability to program in the BMU has been a nuisance."

**Inmate Witness Statement:** On this date, 04-14-07, I interviewed Inmate **SNEEDE (J-37911)** regarding the charges and his recollection of the events of that day and Inmate SNEEDE offered the following statement, "I don't know anything about that ."
HA R
**Inmate Witness Statement:** On this date, 04-16-07, I interviewed Inmate **HART (H-88709)** regarding the charges and his recollection of the events of that day and Inmate SNEEDE offered the following statement, "I didn't hear SOLTERO yelling about the B.M.U. program".

**Investigative Employee's Summation:** On 04-16-07, I was assigned to perform the duties of the Investigative Employee for RVR Log # C07-03-0024. I interviewed Inmates SNEEDE and HART and both inmates stated that either had any knowledge concerning SOLTERO'S RVR. I also interviewed all staff and inmates concerning this RVR.

Inmate SOLTERO requested that Inmates HART and SNEEDE be present at the RVR Hearing.
Inmate SOLTERO did not request that any evidence be produced at the hearing at the time of this report.

This matter is not a D.A. Referral. Inmate SOLTERO was not placed in Ad/Seg pending the adjudication of this Rules Violation Report.

| SIGNATURE OF WRITER | | TITLE | DATE NOTICE SIGNED |
|---|---|---|---|
| M. Nicholson | | Correctional Officer | 4-16-07 |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: 4-16-07 | TIME SIGNED: 1600 |

STATE OF CALIFORNIA                                    L. .'ARTMENT OF CORRECTIONS
RULES VIOLATION REPORT - PART C

PAGE ___1___ OF ___1___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-36340 | SOLTERO | C07-03-0024 | SVSP | 04-16-07 |

| ☐SUPPLEMENTAL | ☐CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☐HEARING | ☒I.E .REPORT | ☐OTHER |
|---|---|---|---|---|---|

On 04-10-07, I was assigned as Investigative Employee for CDC-115 Rules Violation Report, Log Number C07-03-0024. I advised Inmate SOLTERO of my assignment and informed him that as the Investigative Employee, my duties are to act as a fact finder for the Senior Hearing Officer. Inmate SOLTERO acknowledged that he understood my role as the Investigative Employee and has indicated no objections to my assignment in this capacity. My report is as follows:

**Defendants Statement:** On this date, 04-14-07, I conducted an interview with Inmate - **SOLTERO (K 36340)** regarding the charged offense. Inmate SOLTERO provided me with the following questions: "I wasn't yelling out about the BMU Program and I want to know what R. Mott has to say and if his statement is true, about me being dysfunctional and presenting clear and present danger to staff and the BMU program, and if I can have an absentia UCC hearing because of my chronic asthma."

**Reporting Employee's Statement::** On this date, 04-16-07, I interviewed the reporting employee, BMU Coordinator R. Mott regarding the charges and his recollection of the events of that day. BMU Coordinator Mott offered the following statement, "Inmate SOLTERO was being disruptive on the day stated in my report and has been given several opportunities to program. He was yelling out about the, 'Epictetus club' saying its full of shit. SOLTERO'S inability to program in the BMU has been a nuisance."

**Inmate Witness Statement:** On this date, 04-14-07, I interviewed Inmate **SNEEDE (J-37911)** regarding the charges and his recollection of the events of that day and Inmate SNEEDE offered the following statement, "I don't know anything about that ."
HA R
**Inmate Witness Statement:** On this date, 04-16-07, I interviewed Inmate **HART (H-88709)** regarding the charges and his recollection of the events of that day and Inmate SNEEDE offered the following statement, "I didn't hear SOLTERO yelling about the B.M.U. program".

**Investigative Employee's Summation:** On 04-16-07, I was assigned to perform the duties of the Investigative Employee for RVR Log # C07-03-0024. I interviewed Inmates SNEEDE and HART and both inmates stated that either had any knowledge concerning SOLTERO'S RVR. I also interviewed all staff and inmates concerning this RVR.

Inmate SOLTERO requested that Inmates HART and SNEEDE be present at the RVR Hearing.
Inmate SOLTERO did not request that any evidence be produced at the hearing at the time of this report.

This matter is not a D.A. Referral. Inmate SOLTERO was not placed in Ad/Seg pending the adjudication of this Rules Violation Report.

| SIGNATURE OF WRITER | | TITLE | | DATE NOTICE SIGNED |
|---|---|---|---|---|
| M. Nicholson | | Correctional Officer | | |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | | DATE SIGNED: | TIME SIGNED: |

STATE OF CALIFORNIA                                                                L   .'ARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C                                                      PAGE    1    OF    2

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-36340 | Soltero | C07-03-0024 | SVSP | 07-10-07 |

| ☐SUPPLEMENTAL | ☐CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☒HEARING | ☐I.E .REPORT | ☐OTHER |

**Hearing:** Hearing commenced on 07-10-07 at 1030 hours.

**Inmate's Health:** Inmate Soltero stated that his health was good and that he was prepared to proceed with the hearing. I introduced myself as the SHO and explained the hearing procedures.

**MHSDS:** Inmate Soltero is not a participant in the Mental Health Services Delivery System.

**Date of discovery:** 03-23-07                        **Initial RVR copy issued on:** 04-06-07
**Hearing Completed on:** 07-10-07          **Last document issued to inmate on:** 04-06-07
**D.A. Postponed date:** N/A                       **Date D.A. results issued:** N/A

**Time Constraints:** All time constraints have not been met pursuant to CCR§ 3320. Hearing was not held within 30 days of RVR being issued. Inmate Soltero acknowledged receiving all documents used for this hearing 24 hours prior to the hearing.

**Staff Assistant (SA):** Inmate Soltero (has HSD) does not meet the criteria for the assignment of a staff assistant per CCR§ 3315.

**Investigative Employee (IE):** Inmate Soltero does meet the criteria for the assignment of an Investigative Employee per CCR§ 3315. Officer M. Nicholson was assigned. Officer Nicholson interviewed Inmate Soltero as a part of the investigative process, gathered information from witnesses, asking each witness specific questions posed by Inmate Soltero and follow up questions posed by the IE for clarification purposes. Office Nicholson prepared his report, to include his summation of the facts, and provided a copy of the report to inmate Soltero more than 24 hours prior to this hearing.

**D.A. Referral:** This matter was not referred to the Monterey County Attorney's Office.

**Evidence Requested or Used:** Inmate Soltero did not request that evidence be produced for this hearing at the time of the IE report or at the time he was issued a copy of the CDC-115A.

**Video Tape Evidence:** No video tape evidence was utilized in the adjudication or fact finding process of this CDC-115 Rules Violation Report.

**Inmate Plea and Statement:** Inmate Soltero entered a plea of "Not Guilty," stating, "I have never been in cell 223. I have always been in cell 225."

**Witnesses Requested or Provided:** Inmate Soltero requested that Inmates Hart and Sneede (J-37811, C8-131U) be present as witnesses for the hearing. SHO denied both witnesses due to the RVR being dismisssed.

**Witness Testimony at Hearing:** No witnesses were requested or granted by the SHO.

**Confidential Information:** Confidential information was not used in the adjudication of this 115.

**Findings:** Inmate Soltero is found **not guilty** of the charged offense of violating CCR§ 3007; for the specific act of, "Disorderly Conduct," a Division "E" offense (CCR§ 3323(g)(7)). The evidence used to render this finding included:

1.) A review of Inmate Soltero's housing indicates that he has been housed in C8-225. Inmate was identified as being in C8-223, however, on the date of the incident he was housed in C8-225.

| SIGNATURE OF WRITER | | TITLE | | DATE NOTICE SIGNED |
|---|---|---|---|---|
| J. Celaya | | Correctional Lieutenant | | 7 12 o |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | | DATE/SIGNED: 07/23/07 | TIME SIGNED: 1300 |

STATE OF CALIFORNIA                                                L 'ARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C                                   PAGE __2__ OF __2__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|------------|---------------|------------|-------------|--------------|
| K-36340 | Soltero | C07-03-0024 | SVSP | 07-10-07 |

| ☐SUPPLEMENTAL | ☐CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☑HEARING | ☐I.E .REPORT | ☐OTHER |
|---|---|---|---|---|---|

Base on the aforementioned facts, this SHO finds the preponderance of the evidence **has not** been met to render and sustain a finding of guilt on the charged offense of violating CCR§ 3007; specifically, "Disorderly Conduct," a Division "E" offense (CCR§3323 (g)(7)).

**Additional Disposition:** None.

**Enemy Concerns:** There are no enemy concerns related to this disciplinary hearing.

**Appeal Rights:** Inmate Soltero was advised that the disposition of this Rules Violation Report would not become final until approved by the Chief Disciplinary Officer at which time he will receive a final copy of the completed CDC-115. He was also advised of his rights to appeal the findings of this hearing, the methods of appealing, and credit restoration rights pursuant to CCR§ 3327 & 3328, governing the restoration of forfeited credits.

INMATE COPY

| SIGNATURE OF WRITER | | TITLE | | DATE NOTICE SIGNED |
|---|---|---|---|---|
| J. Celaya | | Correctional Lieutenant | | 7/12/9 |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | | DATE SIGNED: 07/23/07 | TIME SIGNED: 1800 |

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | | VIOLATED RULE NO(S). | | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|---|---|
| K-36340 | SOLTERO | | C.C.R. §3005(b) | | 03-23-07 | S.V.S.P. | |

| REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT | | YES | ☒ NO | | |

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | |
| I REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|
| | N/A |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| I REVOKE my request for postponement. | ▶ N/A | |

## STAFF ASSISTANT

| STAFF ASSISTANT | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| ☐ REQUESTED | ☐ WAIVED BY INMATE | ▶ | |
| ☐ ASSIGNED | DATE    NAME OF STAFF | | |
| ☒ NOT ASSIGNED | REASON   N/R | | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| ☒ REQUESTED | ☐ WAIVED BY INMATE | ▶ | |
| ☐ ASSIGNED | DATE    NAME OF STAFF | | |
| ☐ NOT ASSIGNED | REASON | | |

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

| ☐ REPORTING EMPLOYEE | ☐ STAFF ASSISTANT | ☐ INVESTIGATIVE EMPLOYEE | ☐ OTHER ___ | ☐ NONE |

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT; Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| | INVESTIGATOR'S SIGNATURE | | DATE |
|---|---|---|---|
| | ▶ | | |

| ☐ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | | TIME | DATE |
|---|---|---|---|---|

# EXIBIT Amend. 'H'

'H-1' Mott, RVE 115# C07-01-0014 ;
'H-2' Solis, RVE 115# C06-10-0017 ;
'H-3' Chavez, RVE 115# C06-12-0047;
'H-4' Pardor, 128B ;
'H-5' Nilsson, 128A.

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| K-36340 | SOLTERO | | | S.V.S.P. | C8-225 | C07-01-0014 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | Recurring failure to | LOCATION Fac "C" | DATE | TIME |
|---|---|---|---|---|---|
| C.C.R. §3005(b) | Meet Program Expectations | | | 01/11/07 | |

CIRCUMSTANCES

Inmate SOLTERO, (K-36640, C8-225), has refused to sign the BMU Privileges & Expectation form as part of his placement in Behavior Modification Unit (BMU). SOLTERO refuses to participate in Cage Your Rage as outlined in his Individual Treatment Plan (ITP) and Operational Procedure 11-C and therefore, has failed to meet expectations in the BMU program. SOLTERO has been instructed numerous times to sign the BMU Privileges & Expectations form and to program. He has consistently declined and informed me that he would contact me when he is ready to program. Specifically, SOLTERO was instructed to program on 12/21/06, and subsequently on January 08, 2007. SOLTERO has received a CDC-115 for the same offense. **SOLTERO has received a CDC-115 for the same offense on 12/26/06**

Inmate SOLTERO [is] **[is not]** a participant in the Mental Health Services Delivery System and is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ▶ R. Mott, BMU Facilitator | | 1/17/2007 | | |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| ▶ | | DATE ____ LOC. ____ |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | | | ▶ | ☐ HO ☒ SHO ☐ SC ☐ FC |

## COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | TITLE OF SUPPLEMENT | | | |
|---|---|---|---|---|---|---|---|
| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | BY: (STAFF'S SIGNATURE) ▶ | | DATE | TIME |

HEARING

| REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA | | | |
|---|---|---|---|
| ACTION BY: (TYPED NAME) | SIGNATURE ▶ | DATE | TIME |
| REVIEWED BY: (SIGNATURE) ▶ | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE ▶ | DATE |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

CDC 115 (7/88)

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| K-36340 | SOLTERO | CCR§3005 (b) | 1-11-07 | S.V.S.P. | C07-01-0014 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☐ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| I **DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | |
| I **REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION | N/A | |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| I **REVOKE** my request for postponement. | ▶ N/A | |

## STAFF ASSISTANT

| STAFF ASSISTANT | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| ☐ REQUESTED | ☐ WAIVED BY INMATE | ▶ | |
| ☐ ASSIGNED | DATE / NAME OF STAFF | | |
| ☐ NOT ASSIGNED | REASON | | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| ☒ REQUESTED | ☐ WAIVED BY INMATE | ▶ | |
| ☐ ASSIGNED | DATE / NAME OF STAFF | | |
| ☐ NOT ASSIGNED | REASON | | |

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☐ REPORTING EMPLOYEE ☐ STAFF ASSISTANT ☐ INVESTIGATIVE EMPLOYEE ☐ OTHER _____ ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| | INVESTIGATOR'S SIGNATURE ▶ | | DATE |
|---|---|---|---|
| ☐ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME | DATE |

CDC 115-A (7/88) — *If additional space is required use supplemental pages* — OSP 03 74845

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**
PAGE___OF___

| CDC NUMBER | INMATE'S NAME | | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|---|
| K-36340 | SOLTERO | | C07-01-0014 | S.V.S.P. | 01/28/07 |

| SUPPLEMENTAL | CONTINUATION OF: | 115 CIRCUMSTANCES | HEARING | ☒ IE REPORT | OTHER_____ |

On 01-23-07, I was assigned as Investigative Employee for CDC 115 Rules Violation Report, log number C07-01-0014. I advised Inmate SOLTERO of my assignment and informed him that as the Investigative Employee, my duties are to act as a fact finder for the Senior Hearing Officer. Inmate SOLTERO acknowledged that he understood my role as the Investigative Employee and has indicated no objections to my assignment in this capacity. My report is as follows:

**Defendant's Statement:** On this date, 01-28-07, I conducted an interview with **Inmate SOLTERO (K-36340)** regarding the charged offense. Inmate SOLTERO offered the following statement, "I don't want one."

**Reporting Employee's Statement:** On this date, 01-28-07, I interviewed the reporting employee, Officer R. Mott, regarding the charges and his recollection of the events of that day. Officer R. Mott offered the following statement, "SOLTERO continues not to sign or program, refuses to participate in the PMU program. SOLTERO has been instructed numerous times to sign PMU privileges and expectations."

**Investigative Employee's Summation:** Inmate SOLTERO did not refuse me as Investigative Employee on 01/28/07. SOLTERO did not want to comment on the CDC-115. PMU Facilitator R. Mott stated that all information was in the CDC-115"

J. Mora, Correctional Officer

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| | | |

| COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|

CDC-115-C (5/95)
OSP 99 25082

CDCR 115 & CDCR 804 TO RECORDS:

STATE OF CALIFORNIA
**RULES VIOLATION REPORT**                                          DEPARTMENT OF CORRECTIONS

MEPD

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| K-36340 | Soltero | | 2/24/2021 | S.V.S.P. | FC-B8-228 | C06-10-0017 |
| VIOLATED RULE NO(S). | | SPECIFIC ACTS **Recurring Failure to** | LOCATION **Fac 'C'** | | DATE | TIME |
| 3005(b) | | **Meet Program Expectations** | Committee Room | | 10-02-06 | |

CIRCUMSTANCES

On August 23, 2006, you were seen by the Unit Classification Committee (UCC) and placed in the Behavior Modification Unit (BMU). You were advised of the program's expectations. Soltero refused to participate by refusing to sign the CDC 128-B privileges and expectations form. Based on this, you received a CDC 128-A Custodial Counseling Chrono. On October 2, 2006, you were seen by U.C.C. regarding the BMU treatment program and your willingness to participate. However, you refused to participate in the Behavior Modification Unit program again. Based on this, you are clearly deemed a failure of the BMU program. Therefore, you are being issued this Rules Violation Report for recurring failure to meet program expectations. You are instructed to comply with the BMU program expectations. Continued failure to successfully program will result in further disciplinary action.

Inmate Soltero is not a participant in the MHSDS at the CCCMS level of care and is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) | | | DATE | | ASSIGNMENT | | RDO'S |
|---|---|---|---|---|---|---|---|
| V. Solis, Correctional Counselor II | | | 10/12/06 | | Fac.'C' CCII | | S/S |
| REVIEWING SUPERVISOR'S SIGNATURE | | DATE | ☐ INMATE SEGREGATED PENDING HEARING | | | | |
| | | 10/12/06 | DATE _____ | | LOC. _____ | | |
| CLASSIFIED | OFFENSE DIVISION | DATE | CLASSIFIED BY (Typed Name and Signature) | | | HEARING REFERRED TO | |
| ☐ ADMINISTRATIVE | | 1/16/06 | | | | ☐ HO   ☐ SHO   ☐ SC   ☐ FC | |
| ☐ SERIOUS | | | | | | | |
| COPIES GIVEN INMATE BEFORE HEARING | | | | | | | |
| ☐ CDC 115 | BY: (STAFF'S SIGNATURE) | | DATE | TIME | TITLE OF SUPPLEMENT | | |
| | | | 12/16/06 | 1600 | BMU CHRONO | | |
| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) | | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |

HEARING

**Plea:** The charges were read aloud as written to Inmate Soltero, who acknowledged understanding the charge and entered a plea of Not Guilty.

**Findings:** Inmate Soltero was found **Guilty** of violating CCR§ 3005(b); specifically, "Recurring Failure to Meet Program Expectaitons," a Division 'F' offense (CCR§ 3323(h)(3)).

**Disposition:** Assessed 30 days forfeiture of behavioral credites, consistent with a Division 'F' offense (CCR§ 3323(h)(3)); Inmate was counseled and reprimannded.

**Classification:** Referred to UCC for program review.

**Disposition continued on CDC 115-C**

REFERRED TO ☐ CLASSIFICATION   ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | | SIGNATURE | | DATE | TIME |
|---|---|---|---|---|---|
| E. Moore, Lieutenant | | | | 1/17/07 | 1945 |
| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | | DATE | |
| G. Ponder, Captain | 1/19/07 | M. Moore | | 1-4-07 | |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | | | DATE | TIME |
| | | | | 01/29/07 | 1800 |

CDC 115 (7/88)

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C                              PAGE ___1___ OF ___2___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-36340 | Soltero | C06-10-0017 | SVSP | 12-14-06 |

| ☐SUPPLEMENTAL | ☐CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☒HEARING | ☐I.E .REPORT | ☐OTHER |
|---|---|---|---|---|---|

**Hearing:** This hearing commenced on 12-14-06 at 2015 hours

**Inmate's Health:** Inmate Soltero stated his health was good and that he was ready to proceed with the hearing.  I introduced myself as the SHO and explained the hearing procedures.

**MHSDS:** Inmate Soltero is not a participant in the Mental Health Services Delivery System.

**Date of discovery:** 10-02-06                     **Initial RVR copy issued on:** 10-16-06
**Hearing Completed on:** 12-14-06                   **Last document issued to inmate on:** 11-13-06
**D.A. Postponed date:** N/A                         **D.A. result issued:** N/A

**Time Constraints:** All time constraints have been met pursuant to CCR§ 3320. On 11-15-06, Inmate Soltero postponed the hearing pending outcome of appeal with Sacramento (log# SVSP-05-04744) as noted by his signature on the CDC 115A. Inmate Soltero acknowledged receiving all documents used for this hearing 24 hours prior to the hearing.

**Staff Assistant (SA):** Inmate Soltero (GPL HSD) does not meet the criteria for the assignment of a staff assistant per CCR§3315.

**Investigative Employee (IE):** Inmate Soltero requested and does meet the criteria for the assignment of an Investigative Employee. Officer J. Valdez was assigned. Officer J. Valdez interviewed Inmate Soltero as a part of the investigative process, gathered information from witnesses, asking each witness specific questions posed by Inmate Soltero and follow up questions posed by the IE for clarification purposes. Office J. Valdez prepared his report, to include his summation of the facts, and provided a copy of the report to inmate Soltero more than 24 hours prior to this hearing.

**D.A. Referral:** This matter was not referred to the Monterey County Attorney's Office.

**Evidence Requested or Used:** Inmate Soltero did not request that evidence be produced for this hearing at the time of his IE report or at the time he was issued a copy of the CDC-115A.

**Video Tape Evidence:** No video tape evidence was utilized in the adjudication or fact finding process of this CDC-115 Rules Violation Report.

**Inmate Plea and Statement:** Inmate Soltero entered a plea of, "Not Guilty" stating, "I based my decision not to sign and participate in the BMU Program based on a previous appeal decision made by Inmate Appeals Branch on Appeal #05-09-161 and additional mail correspondence from the Office of Administrative Law with T. Lockwood."."

**Witnesses Requested or Provided:** Inmate Soltero did not request that any staff or inmate witnesses be produced for this hearing.

**Witness Testimony at Hearing:** Questions from SHO for Inmate Soltero:
Q1) Would you be willing to participate in the BMU Program if you were not required to sign the CDC 128-B?
A1) "No. I refuse to participate in any program or sign any documentation that attaches my name to Organized Criminal/Gang Activity."

**Confidential Information:** Confidential information was not used in the adjudication of this 115.

| SIGNATURE OF WRITER | | TITLE | DATE NOTICE SIGNED |
|---|---|---|---|
| E. Moore | | Correctional Lieutenant | 1/17/07 |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: 01/29/07 | TIME SIGNED: 1800 |

STATE OF CALIFORNIA                                      DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

PAGE __2__ OF __2__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-36340 | Soltero | C06-10-0017 | SVSP | 12-14-06 |

| ☐SUPPLEMENTAL | ☐CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☑HEARING | ☐I.E .REPORT | ☐OTHER |
|---|---|---|---|---|---|

**Findings:** Inmate Soltero is found guilty of the charged offense of violating CCR§ 3005(b); for the specific act of, "Recurring Failure to Meet Program Expectations," a Division 'F' offense (CCR§ 3323(h)(3)). The evidence used to render this finding included:

1.)  Rules Violation Report authored by Correctional Officer V. Solis, which states in part, "On August 23, 2006, you were seen by the Unit Classification Committee (UCC) and placed in the Behavior Modification Unit (BMU). You were advised of the program's expectations. Soltero refused to participate by refusing to sign the CDC 128-B privileges and expectations form. Based on this, you received a CDC 128-A Custodial Counseling Chrono. On October 2, 2006, you were seen by U.C.C. regarding the BMU treatment program and your willingness to participate. However, you refsused to participate in the Behavioral Modification Unit program again. Based on this, you are clearly deemed a failure of the BMU program…"

2.)  Soltero argues that he should not be punished for refusing to sign the BMU Program documentation based on previous appeals which have been granted which basically state that inmates can't be punished for refusing to sign document. The RVR states that Soltero refused to sign a BMU Program CDC 128-B but <u>the actual violation in the RVR is "Recurring Failure to Meet Program Expectations"</u> noted as the specific act. On 9/23/06, Soltero was placed in the BMU Program, based on specific case factors, by a Unit Classification Committee (UCC). On 9/23/06, Soltero refused to participate in the BMU Program. On 10/2/06, Soltero was brought back before UCC and again refused to participate in the BMU Program. UCC placed Soltero in the BMU Program and has clearly set forth the program expectations. Soltero has repeatedly refused to participate in the BMU Program, to include Soltero's refusal during this hearing, as expected.

3.)  Partial admission in Soltero's testimony during the hearing in which Inmate Soltero stated, "I refuse to participate in any program or sign any documentation that attaches my name to Organized Criminal/Gang Activity."

Base on the aforementioned facts, this SHO finds the preponderance of the evidence has been met to render and sustain a finding of guilt on the charged offense of violating CCR§ 3005(b); specifically, "Recurring Failure to Meet Proram Expectations," a Division 'F' offense (CCR§3323 (h)(3)).

**Additional Disposition:** None.

**Enemy Concerns:** There are no enemy concerns related to this disciplinary hearing.

**Appeal Rights:** Inmate Soltero was advised that the disposition of this Rules Violation Report would not become final until approved by the Chief Disciplinary Officer at which time he will receive a final copy of the completed CDC-115. He was also advised of his rights to appeal the findings of this hearing, the methods of appealing, and credit restoration rights pursuant to CCR§ 3327 & 3328, governing the restoration of forfeited credits.

*NOTE: ASSIGNMENT OFFICE PROCEDURE CIRCUMVENTED >*

| SIGNATURE OF WRITER | | TITLE | DATE NOTICE SIGNED |
|---|---|---|---|
| E. Moore | | Correctional Lieutenant | 1/17/07 |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: 01/29/07 | TIME SIGNED: 1800 |

STATE OF CALIFORNIA
RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS
PAGE   1   OF   1

| CDC NUMBER K-36340 | INMATE'S NAME Soltero | LOG NUMBER C06-10-0017 | INSTITUTION SVSP | TODAY'S DATE 11-08-06 |
|---|---|---|---|---|

| ☐SUPPLEMENTAL | ☐CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☐ HEARING | ☒E .REPORT |
|---|---|---|---|---|

On 11-08-06, I was assigned as Investigative Employee for CDC-115 Rules Violation Report, Log Number C06-10-0017. I advised Inmate Soltero of my assignment and informed him that as the Investigative Employee, my duties are to act as a fact finder for the Senior Hearing Officer. Inmate Soltero acknowledged that he understood my role as the Investigative Employee and has indicated no objections to my assignment in this capacity. My report is as follows:

**Defendants Statement:** On this date, 11-08-06, I conducted an interview with Inmate Soltero (CDC# K-36340) regarding the charged offense. Inmate Soltero offered the following statement, "Per Sacramento's response I, Inmate Soltero cannot be punished for refusing to sign interview forms and a copy was sent to the Warden and another to the Appeals Coordinator. This is all I have to say."

**Reporting Employee's Statement::** On this date, 11-08-06, I interviewed the reporting employee, V. Solis, regarding the charges and his/her recollection of the events of that day. CCII Solis offered the following statement, "That Inmate Soltero clearly is deemed a failure of the BMU Program."

**Investigative Employee's Summation:** On 11-08-06, Inmate Soltero told me that he sent copies of his interview forms to the Warden and Appeals Coordinator and stated, "and that's all I have to say." Soltero did not have any other staff or inmate witnesses to add.

Inmate Soltero did not request any staff or inmate witnesses be present for the hearing at the time of this report.
Inmate Soltero did not request any evidence be produced for the hearing at the time of this report.

| SIGNATURE OF WRITER J. Valdez | TITLE Correctional Officer | DATE NOTICE SIGNED 11/9/06 | |
|---|---|---|---|
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: 11/13/0C | TIME SIGNED: 1430 |

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| K36340 | Soltero | 3005(b) | 10-02-06 | S.V.S.P. | C06-10-0017 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☒ NO

### POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | |
| ☐ I REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|
| | |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I REVOKE my request for postponement. | ▶ N/A | |

### STAFF ASSISTANT

| STAFF ASSISTANT ☐ REQUESTED   ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ | DATE |
|---|---|---|
| ☐ ASSIGNED   DATE / NAME OF STAFF | | |
| ☒ NOT ASSIGNED   REASON  DNMC  PER  TITLE  15  CCR  3315 | | HSD |

### INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE ☒ REQUESTED   ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ I/m  REFUSES TO SIGN | DATE |
|---|---|---|
| ☐ ASSIGNED   DATE / NAME OF STAFF | | |
| ☐ NOT ASSIGNED   REASON | | |

EVIDENCE/INFORMATION REQUESTED BY INMATE:

### WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)
☐ REPORTING EMPLOYEE   ☐ STAFF ASSISTANT   ☐ INVESTIGATIVE EMPLOYEE   ☐ OTHER _____   ☒ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

I   I/m Soltero  CDC# K36340  Am  REQUESTING  To
POSTPONE  MY  HEARING  Till  DECEMBER  15  PENDING  AN
too  APPEAL  PENDING  WITH  SACRAMENTO  (Log # SVSP-05-0474)

X _____

DATE:  11/15/06

| | INVESTIGATOR'S SIGNATURE ▶ | DATE |
|---|---|---|
| | | |

| ☐ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME  1600 | DATE  10/16/06 |
|---|---|---|---|

CDC 115-A (7/88)        — If additional space is required use supplemental pages —        OSP 03 74845

STATE OF CALIFORNIA
**RULES VIOLATION REPORT**

DEPARTMENT OF CORRECTIONS

| CDC NUMBER | INMATE'S NAME | | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|---|
| K-36340 | Soltero | | | | S.V.S.P. | FC-68-228 | C06-10-0017 |
| VIOLATED RULE NO(S). | | SPECIFIC ACTS Recurring Failure to | | | LOCATION Fac 'C' | DATE | TIME |
| 3005(b) | | Meet Program Expectations | | | Committee Room | 10-02-06 | |

CIRCUMSTANCES

On August 23, 2006, you were seen by the Unit Classification Committee (UCC) and placed in the Behavior Modification Unit (BMU). You were advised of the program's expectations. Soltero refused to participate by refusing to sign the CDC 128-3 privileges and expectations form. Based on this, you received a CDC 128-A Custodial Counseling Chrono. On October 2, 2006, you were seen by U.C.C. regarding the BMU treatment program and your willingness to participate. However, You refused to participate in the Behavior Modification Unit program again. Based on this, you are clearly deemed a failure of the BMU program. Therefore, you are being issued this Rules Violation Report for recurring failure to meet program expectations. You are instructed to comply with the BMU program expectations. Continued failure to successfully program will result in further disciplinary action.

Inmate Soltero is not a participant in the MHSDS at the CCCMS level of care and is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) | | | | DATE | ASSIGNMENT | | RDO'S |
|---|---|---|---|---|---|---|---|
| V. Solis, Correctional Counselor II | | | | | Fac. 'C' CCII | | S/S |
| REVIEWING SUPERVISOR'S SIGNATURE | | | DATE | ☐ INMATE SEGREGATED PENDING HEARING | | | |
| ► | | | | DATE | LOC. | | |
| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | | HEARING REFERRED TO | | |
| ☐ ADMINISTRATIVE | | | ► | | | | |
| ☐ SERIOUS | | | | | ☐ HO | ☐ SHO ☐ SC | ☐ FC |

| COPIES GIVEN INMATE BEFORE HEARING | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ CDC 115 | BY: (STAFF'S SIGNATURE) | | DATE | TIME | TITLE OF SUPPLEMENT | | |
| | ► | | | | | | |
| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) | | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
| | ► | | | | ► | | |

HEARING

REFERRED TO ☐ CLASSIFICATION   ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | | SIGNATURE | DATE | TIME |
|---|---|---|---|---|
| | | ► | | |
| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE | |
| ► | | ► | | |
| | BY: (STAFF'S SIGNATURE) | | DATE | TIME |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | ► | | | |

CDC 115 (7/88)

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| K36340 | Soltero | 3005(b) | 10-02-06 | S.V.S.P. | C06-10-0017 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☒ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ | |
| ☐ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ | |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION | | |
|---|---|---|---|

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I REVOKE** my request for postponement. | ▶ | |

## STAFF ASSISTANT

| STAFF ASSISTANT | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ REQUESTED  ☐ WAIVED BY INMATE | ▶ | |

| ☐ ASSIGNED | DATE | NAME OF STAFF | |
|---|---|---|---|
| ☐ NOT ASSIGNED | REASON | | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ REQUESTED  ☐ WAIVED BY INMATE | ▶ | |

| ☐ ASSIGNED | DATE | NAME OF STAFF | |
|---|---|---|---|
| ☐ NOT ASSIGNED | REASON | | |

EVIDENCE/INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)
☐ REPORTING EMPLOYEE  ☐ STAFF ASSISTANT  ☐ INVESTIGATIVE EMPLOYEE  ☐ OTHER_____  ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| INVESTIGATOR'S SIGNATURE | DATE |
|---|---|
| ▶ | |

| ☐ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME | DATE |
|---|---|---|---|

CDC 115-A (7/88)          *— If additional space is required use supplemental pages —*

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| K-36340 | SOLTERO | | S.V.S.P. | C8-225 | |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | | LOCATION | DATE | TIME |
|---|---|---|---|---|---|
| C.C.R. §3005(b) | Recurring Failure to Meet Program Expectations | | Build. 8 | 12/26/06 | 1030 hrs. |

CIRCUMSTANCES On 12/22/06, at approximately 1030 hours, you Inmate SOLTERO, (K-36340, C8-225), failed to participate in the facility interviews. Interviews are designed to gather information and assist the administration with returning the facility to a normal program. By failing to interview the administration is unable to determine the threat you pose to other inmates or staff and or having any information relative to the incident (criminal gang activity which occurred) that requires the interview process per D.O.M. 55015 Unlock Protocol. Based on this, it appears that you are promoting the activity or organized criminal/gang/disruptive group activity, which occurred that required an investigation/interview process to be implemented. As a general population inmate, you are expected to comply with departmental policy, rules and regulations as well as institutional procedures. State and Federal Laws. By failing to participate in the interview process, you are willfully indicating that you may have information and could actively be participating and promoting in organized criminal gang/disruptive group activity. You were non-receptive to counseling. On 12/26/06, you were instructed to interview and again failed to comply. Based on the nature of the incident your refusal to participate in the review process, you are promoting organized criminal gang/disruptive group activity. You are instructed to comply with the interview process. Failure to do so will continue to result in progressive discipline. Inmate SOLTERO [is] [is not] a participant in the Mental Health Services Delivery System.

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ B. Chavez, Correctional Officer | 01/01/7 | C8 Floor Officer | T/F |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| ▶ | | DATE _____ LOC. _____ |

| CLASSIFIED | OFFENSE DIVISION | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE | | | ▶ | |
| ☒ SERIOUS | | | | ☐ HO   ☐ SHO   ☐ SC   ☐ FC |

| COPIES GIVEN INMATE BEFORE HEARING | | | | |
|---|---|---|---|---|
| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) ▶ | DATE 1/5/07 | TIME 0715 | TITLE OF SUPPLEMENT |
| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

HEARING

**Plea:** The defendant entered a plea and admitted his innocence. Soltero did not acknowledge his failing to comply with the charges and entered a plea of Not Guilty. the witness signature on the CDC 115.

**Findings:** Inmate Soltero was found **Guilty** of violating CCR§ 3005(b); specifically, "Recurring Failure to Meet Program Expectations," a Division 'F' offense (CCR§ 3323(h)(3)).

**Disposition:** Assessed 30 days forfeiture of behavioral credits, consistent with a Division 'F' offense (CCR§ 3323(h)(3)); assessed 90 days loss of privileges: ½ canteen draw, no special purchase, no quarterly packages, no telephone use and no yard access (to begin 01-11-07 and end 04-11-07); Inmate was counseled and reprimanded.

| REFERRED TO ☐ CLASSIFICATION   ☐ BPT/NAEA | **Disposition continued on CDC 115-C** | | |
|---|---|---|---|
| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
| J. Celaya, Lieutenant | ▶ | | |
| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
| ▶ G. Ponder, Captain | | ▶ M. Moore | |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

CDC 115 (7/88)

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|---|
| K-36340 | SOLTERO | | C.C.R. 3005(b) | 12/26/06 | S.V.S.P. | |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☒ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | |
| **I REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|
| | N/A |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| **I REVOKE** my request for postponement. | ▶ N/A | |

## STAFF ASSISTANT

| STAFF ASSISTANT | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| ☐ REQUESTED | ☐ WAIVED BY INMATE | ▶ | |
| ☐ ASSIGNED | DATE | NAME OF STAFF | |
| ☐ NOT ASSIGNED | REASON | | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| ☐ REQUESTED | ☐ WAIVED BY INMATE | ▶ | |
| ☐ ASSIGNED | DATE | NAME OF STAFF | |
| ☐ NOT ASSIGNED | REASON | | |

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☐ REPORTING EMPLOYEE   ☐ STAFF ASSISTANT   ☐ INVESTIGATIVE EMPLOYEE   ☐ OTHER _____   ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| | INVESTIGATOR'S SIGNATURE | | DATE |
|---|---|---|---|
| | ▶ | | |
| ☑ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME | DATE |

CDC 115-A (7/88)    *— If additional space is required use supplemental pages —*    OSP 03 74845

·STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C
                                                       PAGE ___1___ OF ___2___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-36340 | Soltero | C06-12-0047 | SVSP | 01-11-07 |

| ☐SUPPLEMENTAL | ☐CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☒HEARING | ☐I.E .REPORT | ☐OTHER |
|---|---|---|---|---|---|

**Hearing:** Hearing commenced on 01-11-07 at 1040 hours, Inmate Soltero refused to attend.

**Inmate's Health:** Inmate Soltero refused to attend the hearing, therefore, his health was not ascertained.

**MHSDS:** Inmate Soltero is not a participant in the Mental Health Services Delivery System.

Date of discovery: 12-26-06                    Initial RVR copy issued on: 01-05-07
Hearing Completed on: 01-11-07                 Last document issued to inmate on: 01-05-07
D.A. Postponed date: N/A                       Date D.A. results issued: N/A

**Time Constraints:** All time constraints have been met pursuant to CCR§ 3320. Inmate Soltero acknowledged receiving all documents used for this hearing 24 hours prior to the hearing.

**Staff Assistant (SA):** Inmate Soltero (GPL HSD) does not meet the criteria for the assignment of a staff assistant per CCR§ 3315.

**Investigative Employee (IE):** Inmate Soltero does not meet the criteria for the assignment of an Investigative Employee per CCR§ 3315.

**D.A. Referral:** This matter was not eferred to the Monterey County Attorney's Office.

**Evidence Requested or Used:** Inmate Soltero did not request that evidence be produced for this hearing at the time he was issued a copy of the CDC-115A.

**Video Tape Evidence:** No video tape evidence was utilized in the adjudication or fact finding process of this CDC-115 Rules Violation Report.

**Inmate Plea and Statement:** Inmate Soltero refused to attend the hearing, therefore, SHO entered a plea of Not Guilty on his behalf.

**Witnesses Requested or Provided:** Inmate Soltero did not request that any staff or inmate witnesses be produced for this hearing.

**Witness Testimony at Hearing:** No witnesses were requested or granted by the SHO.

**Confidential Information:** Confidential information was not used in the adjudication of this 115.

**Findings:** Inmate Soltero is found **guilty** of the charged offense of violating CCR§ 3005(b); for the specific act of, "Recurring Failure to Meet Program Expectations," a Division 'F' offense (CCR§ 3323(h)(3)). The evidence used to render this finding included:

1.)  Rules Violation Report authored by Correctional Officer B. Chavez, which states in part, "On 12/22/06, at approximately 1030 hours...you inmate Soltero, (K-36340, C8-225), failed to participate in the facility interviews. Interviews are designed to gather information and assist the administration with returning the facility to normal program...On 12/26/06, you were instructed to interview and again failed to comply..."

| SIGNATURE OF WRITER | | TITLE | | DATE NOTICE SIGNED | |
|---|---|---|---|---|---|
| J. Celaya | | Correctional Lieutenant | | 1\|24\|07 | |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | | DATE SIGNED: | | TIME SIGNED: |
| | | | 02/06/07 | | 1800 |

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C                          PAGE __2__ OF __2__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-36340 | Soltero | C06-12-0047 | SVSP | 01-11-07 |

| ☐SUPPLEMENTAL | ☐CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☒HEARING | ☐I.E .REPORT | ☐OTHER |
|---|---|---|---|---|---|

Base on the aforementioned facts, this SHO finds the preponderance of the evidence **has** been met to render and sustain a finding of guilt on the charged offense of violating CCR§ 3005(b); specifically, "Recurring Failure to Meet Program Expectations," a Division 'F' offense (CCR§3323 (h)(3)).

**Additional Disposition:** None.

**Enemy Concerns:** There are no enemy concerns related to this disciplinary hearing.

**Appeal Rights:** Inmate Soltero was advised that the disposition of this Rules Violation Report would not become final until approved by the Chief Disciplinary Officer, at which time he will receive a final copy of the completed CDC-115. He was also advised of his rights to appeal the findings of this hearing, the methods of appealing, and credit restoration rights pursuant to CCR§ 3327 & 3328, governing the restoration of forfeited credits.

| SIGNATURE OF WRITER | | TITLE | DATE NOTICE SIGNED |
|---|---|---|---|
| J. Celaya | | Correctional Lieutenant | 1/24/07 |

| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
|---|---|---|---|
| | | 02/06/07 | 1800 |

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS
**RULES VIOLATION REPORT**

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| K-36340 | SOLTERO | | | S.V.S.P. | CB-225 | |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | Recurring Failure to | | LOCATION Fac "C" | DATE | TIME |
|---|---|---|---|---|---|---|
| C.C.R. §3005(b) | Meet Program Expectations | | | Build. 8 | 12/26/06 | 1030 Hrs. |

CIRCUMSTANCES   On 12/22/06, at approximately 1030 hours, you Inmate SOLTERO, (K-36340, CB-225), failed to participate in the facility interviews. Interviews are designed to gather information and assist the administration with returning the facility to a normal program. By failing to interview the administration is unable to determine the threat you pose to other inmates or staff and or having any information relative to the incident (criminal gang activity which occurred) that requires the interview process per D.O.M. 55015 Unlock Protocol. Based on this, it appears that you are promoting the activity or organized criminal/gang/disruptive group activity, which occurred that required an investigation/interview process to be implemented. As a general population inmate, you are expected to comply with departmental policy, rules and regulations as well as institutional procedures, State and Federal Laws. By failing to participate in the interview process, you are willfully indicating that you may have information and could actively be participating and promoting in organized criminal gang/disruptive group activity. You were non-receptive to counseling. On 12/26/06, you were instructed to interview and again failed to comply. Based on the nature of the incident your refusal to participate in the review process, you are promoting organized criminal gang/disruptive group activity. You are instructed to comply with the interview process. Failure to do so will continue to result in progressive discipline. Inmate SOLTERO [is] [is not] a participant in the Mental Health Services Delivery System.

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | | ASSIGNMENT | | RDO'S |
|---|---|---|---|---|---|---|
| ► B. Chavez, Correctional Officer | | | | C8 Floor Officer | | T/F |

| REVIEWING SUPERVISOR'S SIGNATURE | | DATE | ☐ INMATE SEGREGATED PENDING HEARING | | | |
|---|---|---|---|---|---|---|
| ► | | | DATE | | LOC. | |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | | HEARING REFERRED TO | |
|---|---|---|---|---|---|---|
| ☐ ADMINISTRATIVE | | | ► | | | |
| ☐ SERIOUS | | | | | ☐ HO   ☐ SHO   ☐ SC   ☐ FC | |

| COPIES GIVEN INMATE BEFORE HEARING | | | | | | |
|---|---|---|---|---|---|---|
| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) ► | DATE | TIME | TITLE OF SUPPLEMENT | | |
| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) ► | DATE | TIME | BY: (STAFF'S SIGNATURE) ► | DATE | TIME |

**HEARING**

| REFERRED TO   ☐ CLASSIFICATION   ☐ BPT/NAEA | | | | | |
|---|---|---|---|---|---|
| ACTION BY: (TYPED NAME) | | | SIGNATURE ► | DATE | TIME |
| REVIEWED BY: (SIGNATURE) ► | | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE ► | DATE | |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | | BY: (STAFF'S SIGNATURE) ► | | DATE | TIME |

CDC 115 (7/88)

| CDC NUMBER* | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| K-36340 | SOLTERO | C.C.R. §3005(b) | 12/26/06 | S.V.S.P. | C06-12-05/7 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT        ☐ YES   ☒ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | |
| ☐ I REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE ▶ N/A | DATE |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION | | |
|---|---|---|---|
| | N/A | | |

| | INMATE'S SIGNATURE | | DATE |
|---|---|---|---|
| ☐ I REVOKE my request for postponement. | ▶ N/A | | |

## STAFF ASSISTANT

| STAFF ASSISTANT | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| ☐ REQUESTED | ☐ WAIVED BY INMATE | ▶ | |
| ☐ ASSIGNED | DATE | NAME OF STAFF | |
| ☐ NOT ASSIGNED | REASON | | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| ☐ REQUESTED | ☐ WAIVED BY INMATE | ▶ | |
| ☐ ASSIGNED | DATE | NAME OF STAFF | |
| ☒ NOT ASSIGNED | REASON | | |

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☐ REPORTING EMPLOYEE   ☐ STAFF ASSISTANT   ☐ INVESTIGATIVE EMPLOYEE   ☐ OTHER _____   ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| | INVESTIGATOR'S SIGNATURE ▶ | | DATE |
|---|---|---|---|
| ☒ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME | DATE |

CDC 115-A (7/88)        — *If additional space is required use supplemental pages* —        OSP  03 74845

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC-12BB (8-87)

**NAME  Soltero       NUMBER K-36340          C8-228U**

On 8-23-06 you were seen by Unit Classification Committee and placed in General Population
Behavior Modification Unit. A treatment program was established for you with the first step being the
signing of the Behavior expectation chrono. You refused to sign the chrono and therefore will not
proceed any further in step one until you comply with the first part of the program. You should be
aware that this action on your part is deemed a failure to program. Should this continue you will
receive progressive disciplinary action.

ORIGINAL        : C FILE

C               :

**G. Ponder**
**C Facility Captain**
**Salinas Valley State Prison**

**DATE: August 23, 2006**

NAME: **Soltero**                CDC #: **K36340**            HOUSING: **C8-225L**        CDC 128-A (Rev. 4/74)

On 12-22-06 you failed to participate in the facility interviews. Interviews are designed to gather information and assist the administration with returning the facility to a normal program. By failing to interview the administration is unable to determine the threat you pose to other inmates and/or staff and/or your having any information relative to the incident (criminal/gang activity which occurred) that requires the interview process per D.O.M. 55015 Unlock Protocol. Based on this it appears that you are promoting the activity of organized criminal/gang/disruptive group activity which occurred that required an investigation/interview process to be implemented. As a general population inmate you are expected to comply with departmental policy, rules and regulations as well as Institutional procedures, State and Federal Laws. By failing to participate in the interview process you are willfully indicating that you may have information and could actively be participating and promoting in organized criminal gang/disruptive group activity. You were non receptive to counseling. You are instructed to comply with the interview process. Failure to do so will result in progressive discipline.

c.c. Central File
     Facility Captain
     Correctional Counselor
     Writer
     Housing Officer
     Inmate

M. Nilsson

M. Nilsson
Facility C Program Sergeant
Salinas Valley State Prison

DATE: **12/28/06**                                        COUNSELING CHRONO

EXIBIT

AMEND. 'I'

California Department of Corrections and Rehabilitation                                      Salinas Valley State Prison

## *M E M O R A N D U M*



Date:    November 14, 2005

To:    Inmate Soltero K36340

Subject:  **NON-CONTACT VISITING/FACILITY C INTERVIEW PROCESS**

On July 14, 2005 an inmate attacked and stabbed two correctional officers during the morning meal within C8. Due to this assault the facilities as well as the institution were placed on modified program pending administrative review.

As part of the review process, all C Facility inmates will be interviewed concerning the assault that occurred on July 14th, any possible threats on staff or inmates and the ability to safely program. You, Inmate ___ Soltero ___ have been identified as either failing to successfully complete the interview process or interviewing in such as fashion that staff cannot determine the threat you pose to staff or inmates. Based on these two factors, staff has either determined you as a potential threat to staff or inmates or is unable to determine your threat to staff or other inmates. Based on this you will remain on modified program and be placed on the bottom of the list to be reviewed for program potential. Staff will continue the review process of those inmates that participate in an attempt to return them to normal program.

Based on this you will remain on modified program to include **personal hygiene canteen draw only, no quarterly packages, no special purchase.** Also due to your refusal/failure to comply with the interview process and administrations inability to ascertain your threat status you will be placed on **non-contact visiting**. These modifications will remain in effect until further notice.

Remember, the Department values the sanctity of humane life and will not allow anyone to place another human life in jeopardy. Your help is needed and expected to achieve this goal.

G. Ponder
Facility C
Salinas Valley State Prison

# *M E M O R A N D U M*



**Date:**    December 29, 2005

**To:**    M. S. Evans
Warden (A)

## Subject: **SALINAS VALLEY STATE PRISON FACILITY C PROGRAM STATUS**

This memorandum is to update the population on the Facilities program status. Although the threat is active and the investigation into the attempted murder of two Peace Officers is ongoing, a process has been developed to return inmates to normal program. Based on the number of serious incidents by inmates that completed the process and were released to normal program, the inmate population appears to continue to succumb to peer pressure and condones this violence as acceptable in a level IV 180 general population setting. Violence is not acceptable.

The process requires that inmates comply with interviews and sign chronos indicating their commitment to program without violence. Then each inmate has been rated by staff as to the inmates known behavior indicating their potential for promoting or engaging in violence. Next each inmate's central file is reviewed and their counselor rates the inmate's violence potential based on his case history. All this is then reviewed and a determination is made regarding the inmates need to attend a violence diversion course. Unfortunately the process of review and determining the individual inmates need for a violence diversion program is an involved one in addition to the class size being limited. Those inmates that have been rated as having a low potential for violence, are endorsed as meeting the 270 housing criteria or are level III have been cleared to be released to program without needing the violence diversion course. Each inmate is reviewed on a case by case basis and ratings are only a guideline as is any step in the process.

Those inmates that refused to interview or interviewed in a fashion that indicated they were a risk to be or promote violence will be re-interviewed soon. I understand that a portion of the population will always be disruptive; however using the current process, we will identify those inmates and place them in an environment that does not place staff or inmates at risk due to their actions.

Inmates that fail to act in accordance with Departmental rules and institution procedures will receive housing and program changes. Inmates are advised that their privileges and access to programs will be restricted, consistent with existing rules, regulations, and policies until each as an individual successfully complies with this process.

G. PONDER
Associate Warden (A) Complex II
Salinas Valley State Prison

*implementation is not
by committee action per
ccv-33755   ?... ... /un.
in my e floor staff down
Others work?*

**(SVP-FCP-05-02-0090)**

On Tuesday February 8, 2005, a Battery on an Inmate occurred on the Patio area involving four Southern Hispanic inmates and a White inmate. Per Operational Procedures #23, interviews will be conducted for all Southern Hispanic inmates on Yard #2

1.  Do you feel this incident may have caused tension between the Southern and White inmate population?

2.  Do you know why this incident occurred?

3.  Are there any issues among the Southern Hispanic and White Inmates that may havè led to this incident?

4.  If the Southern and White Inmate population were returned to normal program, do you foresee any further problems?

Inmate Signature    _____

Interviewed By      _____
                    Print Name

                    _____
                    Sign Name

**Note: There is a 5-minute minimum on all interviews.**

EXIBIT
Amend 'J'

STATE OF CALIFORNIA                                    ARNOLD SCHWARZENEGGER, Governor

**OFFICE OF ADMINISTRATIVE LAW**                          William L. Gausewitz, Director
300 Capitol Mall, Suite 1250
Sacramento, CA 95814
(916) 323-6225 FAX (916) 323-6826
e-mail: staff@oal.ca.gov



October 19, 2006

Victor Daniel Soltero K-36340
Salinas Valley State Prison C8-228
P.O. BOX 1050
Soledad, CA 93960

Dear Mr. Soltero:

You have asked for the rules and regulations concerning the Behavioral Modification Unit at Salinas Valley
State Prison. The Office of Administrative Law cannot identify any regulations on point, however, we are not
experts on correctional regulations. We suggest you contact a private attorney or

Regulations and Policy Management Branch
Correctional Standards Authority
CDCR
P.O. Box 942883
Sacramento, CA 94283-0001

Legal Staff
Office of Administrative Law

Cc: Tim Lockwood

EXIBIT 'K'

'K-1';
'K-2'; and
'K-3'.

*(d)*

*(1)* THE FOLLOWING CONDITIONS ARE MET. (C) THE CERTIFICATION AND REGULATIONS ARE FILED WITH THE OFFICE OF ADMINISTRATIVE LAW..."

Page 3

PENAL 5058, Rules and regulations; administration of prisons and parole of persons; promulgation

"(d) The following regulations are exempt from Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code under the conditions specified:

*87261 "(1) Regulations adopted by the director or the director's designee applying to any legislatively mandated or authorized pilot program or a departmentally authorized pilot program, provided that an estimate of fiscal impact is completed pursuant to Section 6055, and following. of the State Administrative Manual dated July 1986, and that the following conditions are met:

"(A) A pilot program affecting male inmates only shall affect no more than 10 percent of the total state male inmate population; a pilot program affecting female inmates only shall affect no more than 10 percent of the total state female inmate population; and a pilot program affecting male and female inmates shall affect no more than 10 percent of the total state inmate population.

"(B) The director certifies in writing that the regulations apply to a pilot program that qualifies for exemption under this subdivision.

"(C) The certification and regulations are filed with the Office of Administrative Law and the regulations are made available to the public by publication pursuant to subparagraph (F) of paragraph (2) of subdivision (b) of Section 6 of Title 1 of the California Code of Regulations.

"The regulations shall become effective immediately upon filing with the Secretary of State and shall lapse by operation of law two years after the date of the director's certification unless formally adopted by the director pursuant to Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code.

"(2) Action or actions, or policies implementing them, taken by the department and based upon a determination of imminent danger by the director or the director's designee that there is a compelling need for immediate action, and that unless that action is taken, serious injury, illness, or death is likely to result. The action or actions, or policies implementing them, may be taken provided that the following conditions shall subsequently be met:

"(A) A written determination of imminent danger shall be issued describing the compelling need and why the specific action or actions must be taken to address the compelling need.

"(B) The written determination of imminent danger shall be mailed within 10 working days to every person who has filed a request for notice of regulatory actions with the department and to the Chief Clerk of the Assembly and the Secretary of the Senate for referral to the appropriate policy committees.

"Any policy in effect pursuant to a determination of imminent danger shall lapse by operation of law 15 calendar days after the date of the written determination of imminent danger unless an emergency regulation is filed with the Office of Administrative Law pursuant to subdivision (e). This section shall in no way exempt the department from compliance with other provisions of law related to fiscal matters of the state.

*87262 "(e) Emergency regulations shall be adopted pursuant to Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, except that:

"(1) Notwithstanding subdivision (e) of Section 11346.1 of the Government Code, the initial effective period for emergency regulations shall be 160 days.

"(2) No showing of emergency is necessary in order to adopt emergency regulations other than a written statement by the director or the director's designee, to be filed with the Office of Administrative Law, certifying that operational needs of the department require adoption of the regulations on an emergency basis.

"(3) This subdivision shall apply only to the adoption and one readoption of any emergency regulation.

"It is the intent of the Legislature, in authorizing the deviations in this subdivision from the requirements and procedures of Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, to authorize the department to expedite the exercise of its power to implement regulations as its unique operational circumstances require."

SEE GOVT. § 11340.5 ALSO GOVT. § 11340 *205310 4. REGULATIONS

2002 Legislation

GOVERNMENT"... DETAILED GUIDELINES... THE REGULATION(S) MUST IMPLEMENT, INTERPRET, OR MAKE SPECIFIC THE LAW ENFORCED OR ADMINISTERED..."

Stats.2002, c. 787 (S.B.1798), in subd. (c)(3), deleted "or director's designee" following "director".

Subordination of legislation by Stats.2002, c. 787 (S.B.1798), to other 2002 legislation, except Stats.2002, c. 784 (S.B. 1316), see Historical and Statutory Notes under Family Code § 17400.5.

**2000 Main Volume**

© 2006 Thomson/West. No claim to original U.S. Govt. works.

PENAL 5058, Rules and regulations;    administration of prisons and parole of persons;    promulgation

Statewide administrative regulations pertaining to contact visits of inmates at state prisons were violated by prison policy of allowing persons who had previously refused to submit to a strip search into the prison only after strip searching them, and only for noncontact visits. In re French (App. 1 Dist. 1980) 164 Cal.Rptr. 800, 106 Cal.App.3d 74. Prisons ⬚⇒4(6)

## 6. Invalidly promulgated regulations

Department of Corrections could not rely on amendment to regulation incorporating six cubic feet limit on prisoners' personal property to enforce another regulation which set forth in great detail particular items of personal property subject to limitation, including books and other such materials, where latter regulation was not adopted in accordance with the Administrative Procedure Act. Faunce v. Denton (App. 3 Dist. 1985) 213 Cal.Rptr. 122, 167 Cal.App.3d 191. Administrative Law And Procedure ⬚⇒392.1; Prisons ⬚⇒4(7)

### *87268 7. Exhaustion of administrative remedies

The exhaustion of administrative remedies requirement is jurisdictional, and a court cannot hear a case before a litigant exhausts administrative remedies. Wright v. State (App. 3 Dist. 2004) 19 Cal.Rptr.3d 92, 122 Cal.App.4th 659. Administrative Law And Procedure ⬚⇒229

An inmate who did not complete the third level review process of his claim alleging medical malpractice did not exhaust the available administrative remedies, and the Department of Correction's delay did not excuse inmates's failure to exhaust his available administrative remedies. Wright v. State (App. 3 Dist. 2004) 19 Cal.Rptr.3d 92. 122 Cal.App.4th 659. Convicts ⬚⇒6

State law provides an administrative remedy for prisoner's claims under a regulation authorizing a prison inmate may appeal any departmental decision, action, condition, or policy adversely affecting the inmate's welfare. Wright v. State (App. 3 Dist. 2004) 19 Cal.Rptr.3d 92, 122 Cal.App.4th 659. Prisons⬚⇒ 13(10)

### 8. Grooming

Native American inmate faced possibility of irreparable injury absent issuance of preliminary injunction, in action under Religious Land Use and Institutionalized Persons Act (RLUIPA), preventing California Department of Corrections (CDC) from enforcing grooming policy requiring male inmates to maintain hair no longer than three inches, where his religion forbade him from cutting his hair, he suffered continual punishment by CDC as result of such refusal, and he raised colorable claim that policy violated his free exercise rights under First Amendment. Warsoldier v. Woodford, C.A.9 (Cal.)2005, 418 F.3d 989. Civil Rights ⬚⇒1457(5)

Grooming policy of California Department of Corrections (CDC), requiring male inmates to maintain hair no longer than three inches, was not least restrictive alternative to achieve CDC's interest in prison security, and thus violated Native American inmate's rights under Religious Land Use and Institutionalized Persons Act (RLUIPA), where inmate was confined in minimum-security prison, CDC failed to discuss whether it considered religious exception to policy, and CDC failed to explain why its women's prisons did not adhere to equally strict grooming policy. Warsoldier v. Woodford, C.A.9 ( Cal.)2005, 418 F.3d 989. Prisons ⬚⇒4(14)

*87269 Grooming policy of California Department of Corrections (CDC), requiring male inmates to maintain hair no longer than three inches, imposed substantial burden on Native American inmate's religious practice within meaning of Religious Land Use and Institutionalized Persons Act (RLUIPA), notwithstanding that he was not physically forced to cut his hair, where he was subjected to punishments including confinement to his cell, imposition of additional duty hours, and reclassification into less desirable workgroup. Warsoldier v. Woodford, C.A.9 (Cal.)2005, 418 F.3d 989. Prisons ⬚⇒4(14)

### 9. Injunction

Balance of hardships favored Native American inmate seeking preliminary injunction, in action under Religious Land Use and Institutionalized Persons Act (RLUIPA), preventing California Department of Corrections (CDC) from enforcing grooming policy requiring male inmates to maintain hair no longer than three inches, notwithstanding that inmate was due to be released in 18 days, and that CDC had compelling interest in security, health, and hygiene, where inmate was confined in minimum-security prison. Warsoldier v. Woodford, C.A.9 (Cal.)2005, 418 F.3d 989. Civil Rights ⬚⇒1457(5)

Current through Ch. 729 (end) of 2005 Reg.Sess. urgency legislation & Governor's Reorganization Plans No. 1& 2 of 2005, and all Initiative Measures Appearing on Nov. 8, 2005 ballot

© 2006 Thomson/West. No claim to original U.S. Govt. works.

GOVT § 11340, Legislative findings and declarations

10 Witkin Cal. Summ. 9th Parent and Child § 298B, (New) Department of Child Support Services.

## ANNOTATIONS

### NOTES OF DECISIONS

Availability of review 11
Compliance, generally 7
Construction and application 1
Construction with other laws 2
Injunctive relief 8
Jurisdiction, standard of review 10
Legislative intent 3
Local agencies 6
Necessity of regulations 5
Purpose 3
Regulations, necessity 5
Regulations governed 4
Review, availability 11
Standard of review, generally 9
Standard of review, jurisdiction 10

SEE :

3. PURPOSE
4 . REGULATIONS GOVERNED.

#### 1. Construction and application

The Administrative Procedures Act (APA) provides procedures for state agencies to adopt regulations, which include public notice of the proposed regulation, an opportunity for comment by interested parties, and review by the Office of Administrative Law. Rea v. Workers' Comp. Appeals Bd. (App. 2 Dist. 2005) 25 Cal.Rptr.3d 828, 127 Cal.App.4th 625.

**\*205309** In order to carry out its objectives of advancing meaningful public participation in the adoption of administrative regulations by state agencies and creating an administrative record assuring effective judicial review, the Administrative Procedure Act (APA) (1) establishes basic minimum procedural requirements for the adoption, amendment or repeal of administrative regulations, which give interested parties an opportunity to present statements and arguments at the time and place specified in the notice and calls upon the agency to consider all relevant matter presented to it, and (2) provides that any interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief in the superior court. Pacific Gas and Electric Co. v. State Dept. of Water Resources (App. 3 Dist. 2003) 5 Cal.Rptr.3d 283, 112 Cal.App.4th 477. Administrative Law And Procedure ⬅️ 392.1

#### 2. Construction with other laws

Evidence Code provision presuming that official duty has been regularly performed did not require court to give substantial deference to Department of Health Services' (DHS) determination that its rulemaking fully complied with the Administrative Procedure Act (APA). California Advocates for Nursing Home Reform v. Bonta (App. 1 Dist. 2003) 130 Cal.Rptr.2d 823, 106 Cal.App.4th 498, as modified. Statutes ⬅️ 219(9.1)

There were no irreconcilable conflicts between Porter-Cologne Water Quality Control Act and Administrative Procedure Act (APA) such as would support finding that regulations in former were impliedly exempted from latter; mere fact that Porter-Cologne Act had its own procedural requirements did not, in and of itself, create conflict. State Water Resources Control Bd. v. Office of Admin. Law (App. 1 Dist. 1993) 16 Cal.Rptr.2d 25, 12 Cal.App.4th 697, rehearing denied. Administrative Law And Procedure ⬅️ 383; Environmental Law ⬅️ 170

#### 3. Purpose

The Administrative Procedure Act (APA) was designed in part to prevent the use by administrative agencies of "underground" regulations, and it is the courts, not administrative agencies, which enforce that prohibition. California Advocates for Nursing Home Reform v. Bonta (App. 1 Dist. 2003) 130 Cal.Rptr.2d 823, 106 Cal.App.4th 498, as modified. Administrative Law And Procedure ⬅️ 4.1

One purpose of the Administrative Procedure Act (APA) is to ensure that those persons or entities whom a regulation will affect have a voice in its creation, as well as notice of the law's requirements so that they can conform their conduct accordingly. California Advocates for Nursing Home Reform v. Bonta (App. 1 Dist. 2003) 130 Cal.Rptr.2d 823, 106 Cal.App.4th 498, as modified. Administrative Law And Procedure ⬅️ 4.1

One purpose of Administrative Procedure Act (APA) is to ensure that those persons or entities whom regulation will affect have voice in its creation, as

© 2006 Thomson/West. No claim to original U.S. Govt. works.

GOVT § 11340, Legislative findings and declarations

well as notice of law's requirements so that they can conform their conduct accordingly. Tidewater Marine Western, Inc. v. Bradshaw (1996) 59 Cal.Rptr.2d 186, 14 Cal.4th 557, 927 P.2d 296, certiorari denied 117 S.Ct. 1862, 520 U.S. 1248, 137 L.Ed.2d 1062. Administrative Law And Procedure 4.1



**§05310 4. Regulations governed**

California director of department of corrections, even in promulgating detailed guidelines, as distinguished from general regulations, must comply with procedural requirements of state Administrative Procedure Act (this section et seq.). Hillery v. Rushen, C.A.9 (Cal.)1983, 720 F.2d 1132. Prisons 4(1)

In order for an agency regulation to be subject to the Administrative Procedure Act (APA), the regulation must implement, interpret, or make specific the law enforced or administered by the agency, or govern the agency's procedure. Pacific Gas and Electric Co. v. State Dept. of Water Resources (App. 3 Dist. 2003) 5 Cal.Rptr.3d 283, 112 Cal.App.4th 477. Administrative Law And Procedure 382.1

In order for an agency regulation to be subject to the Administrative Procedure Act (APA), the agency must have intended its rule to apply generally, rather than in a specific case; the rule need not, however, apply universally, but is considered to have general application so long as it declares how a certain class of cases will be decided. Pacific Gas and Electric Co. v. State Dept. of Water Resources (App. 3 Dist. 2003) 5 Cal.Rptr.3d 283, 112 Cal.App.4th 477. Administrative Law And Procedure 382.1

Determination by Department of Water Resources (DWR) as to whether "revenue requirement" submitted to Public Utilities Commission (PUC) to recover costs incurred by DWR in purchasing electrical power during statewide energy crisis was just and reasonable was not regulation, and thus determination was not governed by Administrative Procedure Act (APA); determination did not constitute agency standard of general application, but rather was calculation of amount of specific, reimbursable costs for finite period of time. Pacific Gas and Electric Co. v. State Dept. of Water Resources (App. 3 Dist. 2003) 5 Cal.Rptr.3d 283, 112 Cal.App.4th 477. Waters And Water Courses 203(6)

The department of developmental services' parental fee schedules are not subject to California's Administrative Procedure Act (§ 11340 et seq.) nor its consequent review and approval by the office of administrative law as such schedules fall within the exception provided for in the act for the fixing of "rates, prices or tariffs." 66 Op.Atty.Gen. 505, 12-28-83.

**\*205311 5. Necessity of regulations**

Department of Health Services was not excused from promulgating regulation relating to its random sampling and extrapolation method for auditing Medi-Cal providers by policy under this act of reducing number of administrative regulations; it was for Office of Administrative Law to determine whether regulation was unnecessary and nonduplicative, such that it would be disapproved. Grier v. Kizer (App. 2 Dist. 1990) 268 Cal.Rptr. 244, 219 Cal.App.3d 422, modified, review denied. Administrative Law And Procedure 389; Health 464

The adjustment of prescription drug prices pursuant to Welf. and Inst.C. § 14105.7 may be accomplished by means other than adopting and amending formal regulations under provisions of the Administrative Procedure Act (this section et seq.). 67 Op.Atty.Gen. 50, 2-16-84.

**6. Local agencies**

Although state's Administrative Procedure Act (APA) does not apply to hearings before local, as opposed to state, administrative agencies, to the extent citizens generally are entitled to due process in the form of a fair trial before a fair tribunal, the provisions of the APA are helpful as indicating what the Legislature believes are the elements of a fair and carefully thought out system of procedure for use in administrative hearings. Nightlife Partners v. City of Beverly Hills (App. 2 Dist. 2003) 133 Cal.Rptr.2d 234, 108 Cal.App.4th 81. Administrative Law And Procedure 5

**7. Compliance, generally**

Community association's application to governor to convene a "Tanner Board" for administrative appeal of issuance of conditional use permits for expansion of hazardous waste facility was not incomplete, and thus, was not a valid basis for governor to refuse to convene board, where there was no defect in the application that could be cured by the association, missing information was merely that state agency permits had not been obtained, and state Environmental Protection Agency extrastatutory procedure to resubmit application was not a valid administrative regulation and went beyond requirements of Tanner Act for administrative appeal. Padres Hacia Una Vida Mejor v. Davis (App. 5 Dist. 2002) 117 Cal.Rptr.2d 727, 96 Cal.App.4th 1123. Environmental Law 455

**\*205312** Although state department of health services' interpretation that interim rate reductions for Medi-Cal reimbursement were nonappealable constituted permissible departure from earlier interpretation, interpretation was procedurally invalid where undertaken without any attempt at complying with § § 11340 to 11356 governing administrative agency rule making. Goleta Valley Community Hosp. v. State Dept. of Health Services (App. 2 Dist. 1983) 197 Cal.Rptr. 294, 149 Cal.App.3d 1124. Health 500

Where an agency had adopted an administrative regulation in accordance with the procedural steps specified in § 11371 et seq. (repealed), relating to the adoption of administrative regulations, governing such procedures and before the agency has submitted the adopted regulation for filing with the secretary of state, § 11340 et seq. which established the office of administrative law to review administrative rules and regulations, which replaces Gov. C. § 11371 et seq.

© 2006 Thomson/West. No claim to original U.S. Govt. works.



Citation/Title
49 Cal. Jur. 3d Penal, Etc., Institutions § 9

*80188 California Jurisprudence 3d
Penal and Correctional Institutions
Part One.  Penal and Correctional Institutions
II.  State Penal and Correctional System
A.  In General; Administration
1.  In General

.Topic Summary; Correlation Table

## § 9. Director of Corrections -- Promulgation of rules and regulations

**West's Key Number Digest**

West's Key Number Digest, Prisons ☞4(1), 9.

The Director of Corrections may prescribe and amend rules and regulations for the administration of the prisons, [FN1] and, with the exception of prisoners requiring treatment by the State Department of Mental Health as a condition of parole, for the administration of the parole of persons sentenced under the determinate sentencing statute. [FN2] which must be promulgated and filed pursuant to the provisions of the Administrative Procedure Act. [FN3] They must, to the extent practical, be stated in language that is easily understood by the general public. [FN4] The rules and regulations prescribed by the director must be reasonable and not an abuse of discretion. [FN5]

The Director of Corrections must maintain, publish, and make available to the general public, a compendium of the rules and regulations promulgated by the director. [FN6]

**CUMULATIVE SUPPLEMENT**

**Cases:**

While the Department of Corrections cannot interpret regulations arbitrarily or capriciously, it does not abuse its discretion when it has some basis in fact for its decision. In re Dikes, 121 Cal. App. 4th 825, 18 Cal. Rptr. 3d 9 (1st Dist. 2004), opinion modified, (Aug. 17, 2004).

[END OF SUPPLEMENT]

[FN1] Pen. Code, § 5058, subd. (a).

[FN2] Pen. Code, § 5058, subd. (a), referring to Pen. Code, § 2962 and Pen. Code, § 1170 respectively.

[FN3] Pen. Code, § 5058, subd. (a), referring to Gov. Code, §§ 11340 et seq.

[FN4] Pen. Code, § 5058, subd. (a).

[FN5] In re Ferguson, 55 Cal. 2d 663, 12 Cal. Rptr. 753, 361 P.2d 417 (1961).

*80189 [FN6] Pen. Code, § 5058, subd. (b).

*SPECIFICALLY NAMES:*
*Cal. Pen. Code 5058(d)(1)(C) "PILOT PROGRAM", "DIRECTOR OF CORRECTIONS and CONDITIONS OF SET FET.*

© 2006 Thomson/West. No claim to original U.S. Govt. works.

Citation/Title
9 Witkin, Cal. Proc. 4th (1997) Admin Proc, § 118, p. 1162, a. [§ 118] Invalidity
of Regulation.

\*_   Supplement

Witkin<br>
California Procedure, Fourth Edition<br>
B.E. Witkin and Members of the Witkin Legal Institute<br>
Chapter XIV. Administrative Proceedings<br>
IV. JUDICIAL REVIEW<br>
D. Review of Rulemaking.<br>
3. Declaratory Relief.

### a. [§ 118] Invalidity of Regulation.

### a. [§ 118] Invalidity of Regulation.

Under the A.P.A., "*any interested person*" may obtain a judicial declaration on the validity of a regulation by an action for declaratory relief. The declaratory judgment action is brought in superior<<\* p.1163>> court "in accordance with the Code of Civil Procedure." (Govt.C. 11350(a).) The procedures generally applicable to declaratory judgment proceedings under C.C.P. 1060 et seq. apply. (*Los Angeles v. State Dept. of Public Health* (1958) 158 C.A.2d 425, 443, 322 P.2d 968 [former Govt.C. 11440 (now Govt.C. 11350) effectively amended C.C.P. 1060 to add validity of administrative regulation to subjects for declaratory relief enumerated in that statute]; see 12 Stanf. L. Rev. 826 [denial of retroactive effect to invalidation of rule]; on declaratory relief generally, see 5 *Cal. Proc.* (4th), *Pleading*, §805 et seq.) The right to declaratory relief is not affected by failure to petition, or seek reconsideration of a petition, for adoption, amendment, or repeal of a regulation. (Govt.C. 11350(a); on petitioning for administrative regulatory action, see supra, §35.)

The regulation may be declared invalid on the following grounds:

(1) "Substantial failure" to comply with the Act's rulemaking provisions (Govt.C. 11340 et seq.). (Govt.C. 11350(a); see *Masonite Corp. v. Superior Court* (1994) 25 C.A.4th 1045, 1053, 1054, 31 C.R.2d 173, 49 C.R.2d 639 [regulation adopted by administrative agency is invalid if inconsistent with provisions of governing statute].)

(2) In the case of an emergency regulation or order for repeal under Govt.C. 11346.1 (supra, §38), the facts recited in the agency's statement of need for immediate action do not constitute an emergency. (Govt.C. 11350(a).)

(3) The agency's determination that the regulation is reasonably necessary to effectuate the purpose of the provision of law being implemented (supra,§37) is not supported by substantial evidence. (Govt.C. 11350(b)(1); see *Agricultural Lab. Rel. Bd. v. Exeter Packers* (1986) 184 C.A.3d 483, 492, 229 C.R. 87 [court must apply substantial evidence standard in determining whether regulation is reasonably necessary].)

(4) The agency's declaration under Govt.C. 11346.5(a)(8) that the regulation will not have a significant adverse economic impact on business enterprises (supra, §39) is in conflict with substantial evidence in the record. (Govt.C. 11350(b)(2).)

(5) A regulation adopted under Fin.C. 3373 or 8054 was not made available to the public pursuant to Govt.C. 11343.4(b) (supra, §37). (Govt.C. 11350(c).)

The approval of a regulation by the Office of Administrative Law or the Governor's overruling of a decision to disapprove a

© 2006 Thomson/West. No claim to original U.S. Govt. works.

9 Witkin, Cal. Proc. 4th (1997) Admin Proc, § 118, p. 1162, a. [§ 118] Invalidity of Regulation.

regulation may not be considered.  (Govt.C. 11350(d).)<<* p.1164>>

    The action must be brought before proceedings are commenced to enforce the rule.  Once enforcement proceedings commence, administrative mandamus becomes the exclusive remedy.  (*Tushner v. Griesinger* (1959) 171 C.A.2d 599, 605, 341 P.2d 416; on review of administrative adjudications by administrative mandamus, see infra, §122.)

****SUPPLEMENT****

    9 Witkin, Cal. Proc. 4th (2006 supp.) Admin Proc, § 118, p. 376

**a. [§ 118] Invalidity of Regulation.**

    p. 1163:

    *Interested person may obtain declaratory relief:* See *Voss v. Superior Court* (1996) 46 C.A.4th 900, 923, 54 C,R.2d 225 [issuance of marketing order by Secretary of Department of Agriculture pursuant to Food &<<*Supp. p.377>> Ag.C. 58601 et seq. could be challenged by action for declaratory relief]; *Farm Sanctuary v. Department of Food & Agriculture* (1998) 63 C.A.4th 495, 502, 74 C.R.2d 75 [Department of Food and Agriculture regulation allowing department to approve religious ritualistic slaughter of poultry could be challenged by declaratory judgment action; declaratory relief is appropriate where questions of public interest are involved, including avoidance of cruelty to animals].

    Govt.C. 11350 was amended in 2000 to also authorize judicial review of orders repealing administrative regulations.

    (5) *Regulation not made available to the public:* The version of Govt.C. 11350(c) discussed in the text never became operative.

    *Overruling of decision to disapprove regulation may not be considered:*Govt.C. 11350(d) should be Govt.C. 11350(c).

    *(New) Record of review:* In a proceeding under Govt.C. 11350, the court may consider the following evidence ( Govt.C. 11350(d), added in 2000):

    (1) The rulemaking file prepared under Govt.C. 11347.3 (see text, §39).

    (2) The written statement in support of an emergency regulation or order of repeal under Govt.C. 11346.1 (see text, §38).

    (3) An item required to be included in the rulemaking file that has been omitted, for the sole purpose of proving its omission.

    (4) Information relevant to whether the A.P.A. requires that a regulation be adopted.

    *(New) Standing of organization to challenge validity of regulation:* In *Environmental Protection Information Center v. Department of Forestry & Fire Protection* (1996) 43 C.A.4th 1011, 50 C.R.2d 892, an environmental group sought a judicial declaration that a Board of Forestry regulation exempting timber operations on parcels of land of less than three

© 2006 Thomson/West. No claim to original U.S. Govt. works.

9 Witkin, Cal. Proc. 4th (1997) Admin Proc, § 118, p. 1162, a. [§ 118] Invalidity of Regulation.

acres from the necessity of preparing a timber harvest plan was unauthorized by the Public Resources Code and hence invalid. The group was a bona fide environmental organization with several hundred members in three major timber producing counties. *Held,* plaintiff had standing to contest the regulation.

(a) In *Associated Boat Industries of Northern Calif. v. Marshall* (1951) 104 C.A.2d 21, 230 P.2d 379, the case on which defendant principally relies, this court held that a trade association composed of members subject to a challenged regulation, but not itself so subject, was not an "interested person" under Govt.C. 11350(a). The court reasoned that the association's status was a purely representative one, acting on behalf of its members, because it could not be legally affected by the regulation, and that it accordingly lacked standing under the statute. (43 C.A.4th 1016.) Subsequently, however, in *Residents of Beverly Glen v. Los Angeles* (1973) 34 C.A.3d 117, 109 C.R. 724, a nonprofit civic<<*Supp. p.378>> corporation that consisted of approximately 300 families was found to have standing to challenge a conditional use permit granted to a developer in their area where the nonprofit corporation's pleadings sufficiently alleged that its members would suffer injury from the *_ planned development. The court there suggested that the focus should not be on the word "interested" alone, but rather on whether either the plaintiff or its members might be impacted by the challenged administrative action. On reflection, this court agrees with the *Residents* court and disapproves of *Marshall.* It simply no longer makes good sense to draw a hard-and-fast line between an organization, particularly a nonprofit one, and its members in analyzing whether that organization is an "interested party" for purposes of the statute. Accordingly, this court now holds that an organization may be an "interested person" for purposes of Govt.C. 11350 "if either it or its members is or may well be impacted by a challenged regulation." (43 C.A.4th 1017.)

(b) Plaintiff states that the practical effect of the regulation here has been to deprive it and its members of the right to inspect and comment on timber harvest plans before timber operations take place on parcels of three acres or smaller. This argument has considerable merit. The fact that plaintiff and its members are, by virtue of the regulation, denied the ability to review and comment means, at the very minimum, that they could be subject to the challenged regulation and hence must be considered interested parties for purposes of Govt.C. 11350(a). (43 C.A.4th 1019.)

(c) Defendants urge the court to digress from established California law regarding standing and import into California law principles derived from such United States Supreme Court cases as *Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351, 7 *Summary* (10th),*Constitutional Law,* §139. That case held that an organization challenging governmental action affecting the environment lacked standing to sue. It did so, however, with particular reference to the "case and controversy" language of U.S. Const., Art. III and the long line of cases respecting that language, cases that, among other things, have required that the plaintiff show not only "injury in fact" but also injury that is both "concrete and particularized," "actual or imminent," causally connected with the conduct complained of, and "likely" as opposed to "speculative." Whether this should be the law in California need not be discussed, because it clearly is not. This court perceives neither justification nor authorization to import these federal law principles into the state's jurisprudence. (43 C.A.4th 1020.)

Contents Index and Tables

© 2006 Thomson/West. No claim to original U.S. Govt. works.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VICTOR DANIEL SOLTERO,               )
          Plaintiff,          )         CASE NO: C07-4256 PJH (PR)
                      )
                      )         PROOF OF SERVICE
     v.                       )
JOE McGRATH, et al.,                 )
           Defendant.           )
                      )

     I, the undersigned, hereby certify that I am over the age of eighteen (18) years, and not a party to the above-entitled action. On <u>March 26, 2008</u>, I served a copy of: <u>COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 USC 1983, AMENDED COMPLAINT RE: ORDER DATED MARCH 10, 2008</u>

by placing said copy in a postage paid envelope, fully sealed, addressed to the party(ies) hereinafter listed, by depositing said envelope in the United States Mail:

1. Office of the Clerk, U.S. District Court
   NORTHERN DISTRICT OF CALIFORNIA
   450 Golden Gate Avenue
   San Francisco, CA 94102

2.

3.                                    4.

I declare under penalty of perjury that the foregoing is true and correct.

                        _D. W. Vieth_____
                        Signature

                        _Donald W. Vieth_____
                        Typed Name

High Desert State Prison
P.O. Box 3030
Susanville, CA 96127

LEGAL MAIL



PRIORITY MAIL
UNITED STATES POSTAL SERVICE®
Label 107R, February 2006    www.usps.com

RECEIVED
MAR 3 1 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA


STATE PRISON

Office of the Clerk, U.S. District Court
NORTHERN DISTRICT OF CALIFORNIA
450 Golden Gate Avenue
San Francisco, CA 94102


D5